THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID BARTON BASSETT *et al.*, Defendants-Appellants.

(Nos. 73-245 & 73-247 cons.;

Second District (1st Division)—February 14, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellants.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendants, David Barton Bassett and Dennis Earl Beebe, waived indictment and pled guilty to an information which charged them and three others with the offense of burglary and were each sentenced to a term of 2-6 years in the Illinois State Penitentiary. In their consolidated appeal the defendants contend (1) that the trial court erred in failing to advise the defendants of the nature of the charge and of their right of indictment in accordance with Supreme Court Rule 401(b) (Ill. Rev. Stat. 1971, ch. 110A, par. 401(b)) when defendants waived indictment; (2) that the trial court erred in failing to inform the defendants of the nature of the charge in accordance with Supreme Court Rule 402(a)(1) (Ill. Rev. Stat. 1971, ch. 110A, par. 402 (a)(1)) when the defendants pled guilty; and, (3) that the trial court erred in failing to vacate the guilty pleas and sua sponte order a competency hearing to determine the competency of the defendants to enter the pleas when the trial court was presented with the defendants' presentence psychiatric reports.

The docket entries in the cases against both defendants state that at their arraignment on January 24, 1973, the nature of the charge of burglary was explained to each of them. On February 2, 1973, the public defender of Winnebago County, representing the defendants and the three codefendants, advised the court that the defendants "would like to waive prosecution by Indictment at this time." The following colloquy ensued:

"THE COURT: If you don't waive the Grand Jury then when the Grand Jury meets—it meets periodically—the State's Attorney would present whatever evidence he has against you, and if the Grand Jury, or a majority of them, were of the opinion that there is probable cause to hold you for trial, they would return what is known as a true bill or Indictment and you would be arraigned and tried on the Indictment.

Where you waive the intervention of the Grand Jury, the State's Attorney would file what is called an Information against you, which would charge that on the 22nd day of January, 1973, in the County of Winnebago and State of Illinois, David B. Bassett, Gary Lee Pounders, Gary Hall a/k/a Gary Hull, Dennis Earl Beebe and Raymond Lee Gargani committed the offense of burglary, in that they, without authority, knowingly entered into the

building of Wayne H. Erickson, lessee, doing business as Wayne's Western Auto, located at 3134 Eleventh Street, Rockford, Illinois, with intent to commit therein a theft or felony, in violation of Paragraph 19—1, Chapter 38 of the Illinois Revised Statutes.

Now burglary is an offense, under the new Criminal Code which went into effect January 1, 1973, which is called a Class II felony, and it provides that in case of conviction that you might be imprisoned in the penitentiary for a period of years not less than one year nor more than twenty years, or any indeterminate sentence between one and twenty years, any combination of years, not less than the minimum, plus three years parole or a fine not to exceed $10,000.00 or both fine and imprisonment.

After and if the Indictment would be returned or the Information filed, then the procedure is the same, whether it is by Indictment or Information.

Now, David Bassett, do you understand what I have just said?

DEFENDANT BASSETT: Yes.

THE COURT: Knowing that, you want to waive the Grand Jury.

DEFENDANT BASSETT: Yes.

\* \* \*

THE COURT: Dennis Earl Beebe, do you understand what I have said.

DEFENDANT BEEBE: Yes, Your Honor.

THE COURT: And you want to waive the intervention of the Grand Jury.

DEFENDANT BEEBE: Yes.

\* \* \*

THE COURT: Let the record show the defendants have been advised of their rights and the nature of the charge against them. They persist in their waiver of the Grand Jury. Leave given to file the Information."

Almost immediately thereafter, the defendants and the three codefendants entered guilty pleas which, following admonitions by the court, were accepted.

In *People v. Burdick* (1969), 117 Ill.App.2d 314, 320, 254 N.E.2d 148, 151, this court considered a virtually identical admonition given prior to the acceptance of a waiver of indictment by the same trial judge as in this case. In *Burdick* we held:

"We find no merit in the defendant's contention that his waiver of indictment was void. The trial court properly informed the defendant of his right to have the grand jury presented with the State's evidence against him. He was also properly advised of

the nature of the charge when the court expressly stated that, if he waived the intervention of the grand jury, "* * * you would be charged with aggravated incest * * * knowing that, do you wish to waive the intervention of the Grand Jury?', to which the defendant replied, 'Yes.' [Citations.] In addition, the defendant was informed of the nature of the offense from a copy of the information proposed to be filed as well as an explanation of the charge when he appeared at the preliminary hearing. [Citation.]"

■■ The defendants herein argue that the trial court did not refer to indictment as a *right* in his admonition. The court in *People v. Bishop* (1974), 19 Ill.App.3d 56, 59-60, 310 N.E.2d 691, 694, observed that:

"* * * there is no requirement that the court make a finding or elicit a specific expression of understanding where the record in its entirety shows that the waiver of indictment was intelligently, understandingly and voluntarily made."

We note that the defendants herein, who were represented by counsel, do not argue that they were ignorant of their right to be indicted or that they were harmed or otherwise prejudiced by the failure of the court to expressly refer to indictment as a right. (See *People v. Dudley* (1974), 58 Ill.2d 57, 316 N.E.2d 773.) Accordingly, we find that the trial court satisfied the requirements of Supreme Court Rule 401 in informing the defendants of, and determining that they understood the nature of the charge and their right to indictment by a grand jury.

■■ Once advised of the nature of the charge for purposes of waiver of indictment, the defendants cannot now complain that they were not specifically readvised of the nature of the charge in the immediately subsequent guilty plea proceedings. Such advice applies and carries over into the subsequent proceedings. (*People v. Schyska* (1973), 14 Ill.App. 3d 557, 302 N.E.2d 666.) Thus, we find that the requirements of Supreme Court Rule 402, as it relates to the nature of the charge, were substantially complied with herein. See also *People v. Krantz* (1974), 58 Ill.2d 187, 317 N.E.2d 559.

■■ In addition, we note that the defendants entered a voluntary plea of guilty which, in Illinois, waives any nonjurisdictional defects in the prior proceedings against the defendants. By implication, if not explicitly, in *People v. Loy* (1972), 52 Ill.2d 126, 130, 284 N.E.2d 634, 635, this waiver doctrine was extended to defects in proceedings in which a defendant waives indictment. There, defendant filed a post-conviction petition alleging constitutional error in the proceeding during which he waived the right to have his case presented to a grand jury. In rejecting this claim, the supreme court stated:

"We note also that the defendant entered a plea of guilty to

the two counts of the information. Constitutional rights, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities which are not jurisdictional." (52 Ill.2d 126, 130.)

Thus, regardless of the sufficiency of the admonitions under Supreme Court Rule 401 at the phase of the proceedings in which both defendants waived the right to be indicted, their subsequent voluntary pleas of guilty to the offense of burglary waived any irregularities in the waiver of indictment phase of the proceedings of February 2, 1973.

Lastly, the defendants argue that when the trial court was presented with evidence of the defendant's mental history as part of the presentence report, it should have vacated the pleas and ordered a competency hearing to determine the competency of the defendants to plead guilty. After accepting the defendants' guilty pleas, defense counsel stated the following to the court:

"I do and I have two comments to make on the presentence; first of all, with regard to the defendants, we are not asking for either a mental or physical examination with respect to the defendants. On Beebe and Bassett I request the Court to order a psychiatric examination as part of the presentencing investigation. Both of those two young men have a history of treatment at Singer. I know that Mr. Beebe has previously been at East Moline, and I know that Mr. Bassett has over a period of years had psychiatric problems. I will state that they never indicated to me any inability to cooperate in their defense or to understand what I have stated; therefore, I have not seen fit to file for competency, but I do feel psychiatric examination will help in the matter of sentence."

The court then appointed Dr. J. G. Graybill, a psychiatrist, to examine both defendants. In his report to the court concerning the defendant Beebe, Dr. Graybill discussed the early history of the 20-year-old defendant, including the facts that his mother died in an auto accident when he was 2 years old and his father left him at that time. Since that time, he has lived with aunts and uncles and various relatives and has been in various institutions. The report discussed Beebe's accounts of prior fits of depression and suicide attempts. His intellectual functioning was estimated as within that expected of an individual with a 10th-grade education, and there was no indication of memory loss, thought or perceptual disorder. The report concluded by observing that the defendant presented a picture of one who had suffered emotional deprivation throughout most of his life and who, in the opinion of Dr. Graybill, might be a good candidate for probation under certain conditions.

Dr. Graybill's report regarding the 20-year-old defendant Bassett, which included information gathered from interviews with the defendant's parents, revealed that "his diagnosis in various interviews and in various institutions where he has been placed involved those from mental retardation to those of schizophrenic reaction. Perhaps the most appropriate diagnosis at the present time is that of mental retardation, mild to moderate, with occasional psychotic episodes." The report concluded by recommending placement within a closed institution for this individual.

At the commencement of the hearing on defendants' request for probation, defense counsel re-emphasized his position "* * * that I for one have not seen the necessity as his counsel for filing competency proceedings." To this the court responded, "I think he is competent, all right, from what they say. The psychiatrists' reports find him competent. But there are certain recommendations that they make."

The probation hearing was then put over for one week at which time defense counsel suggested that a proper solution for both defendants would be a nonpenitentiary hospital setting. The State argued that a penitentiary sentence should be imposed with the Department of Corrections having the option to treat the defendants at facilities available to that department. The court acknowledged that "* * * it would be apparent to anybody at the penitentiary that they are in need of mental treatment." The court then sentenced the defendants to a 2-6 year term.

In arguing that there were sufficient facts in this record to raise a bona fide doubt of defendants' competency to plead guilty, defendants contend that the standard governing the competency of a defendant to plead guilty differs from the standard governing competency to stand trial. In support of this contention, defendants cite *Sieling v. Eyman* (9th Cir. 1973), 478 F.2d 211. In *Sieling* the court held that a determination of competency to stand trial is inadequate to determine competency to plead guilty because it does not measure the defendant's capacity by a high enough standard. The court went on to accept the following as a standard governing competency of a defendant to plead guilty:

> " 'A defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea.' " 478 F.2d 211, 215.

■■ In our view, however, the standard governing the competency of a defendant to plead guilty is the same as the standard governing the competency of a defendant to stand trial. (See *People v. Heral*, 25 Ill.App.3d 806, 323 N.E.2d 138.) That standard is set forth in section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973,

ch. 38, par. 1005—2—1). As to the decision of the Ninth Circuit Court of Appeals in *Seiling*, we note that the psychiatrists appointed to examine the defendant therein were in agreement that the defendant was insane at the time of the alleged offense but were in definite conflict as to the defendant's competency to stand trial. Thus, a substantial question as to defendant's mental capacity was presented which is not presented herein. Secondly, we note that the court in *Seiling* was construing a section of the Arizona Rules of Criminal Proceedure which has since been amended to provide the trial court with much greater information on the defendant's competency than that provided under the law under construction in *Seiling*. Finally, we note that the view that a different standard exists for competency to plead guilty and competency to stand trial has been specifically rejected in both the Tenth and Fifth Circuit Courts of Appeal. In *Malinauskas v. United States* (5th Cir. 1974), 505 F.2d 649, 654, the court stated:

> "We agree with the Tenth Circuit that the test of mental competency at the time of trial or the entering of a plea in a criminal case is the same  *  *  *  Wolf v. United States (10th Cir. 1970), 430 F.2d 443  *  *  *."

In rejecting the defendant's contention that he was not competent to plead guilty, the Supreme Court of Illinois in *Withers v. People* (1961), 23 Ill.2d 131, 135, 177 N.E.2d 203, 206, noted that a defendant may be competent to plead guilty even though the defendant may have certain mental or emotional disturbances. The court therein stated:

> "The test to be applied in determining whether a defendant has the mental capacity to stand trial is whether he understands the nature and object of the charges against him and can, in co-operation with his counsel, conduct his defense in a rational and reasonable manner. [Citations.] If the defendant does understand the nature and object of the charges against him and can, in co-operation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial although upon other subjects his mind may be unsound. [Citations.]"

Furthermore, in *People v. Hammond* (1970), 45 Ill.2d 269, 277, 259 N.E. 2d 44, 47, the court stated:

> "While a defendant may possess a sociopathic personality and suffer from psychiatric and social disturbances, these circumstances, without more, are not sufficient to raise a *bona fide* doubt as to his competency."

■■ In the instant case, the record reveals that one defendant suffered a certain emotional disturbance and the other defendant suffered mild to

moderate mental retardation. Considering this as well as the representations of the defense counsel, we do not find that there existed a bona fide doubt of defendants' competency to plead guilty. Accordingly, the trial court did not err in failing to vacate the guilty pleas and order a competency hearing. For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.