PEOPLE v MATHESON

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF NOLO CONTENDERE—FREELY AND VOLUN-
   TARILY MADE—JUDICIAL DISCRETION—COURT RULES.

   A court shall not accept a plea of nolo contendere without
   personally addressing the defendant and determining that the
   plea is freely, understandingly and voluntarily made; however,
   this determination need not be made in any particular manner
   and may be concluded from the judge's acceptance of the plea
   even though he makes no separate finding of fact; a determina-
   tion of competence is consigned to the judge's discretion (GCR
   1963, 785.7[2]).

2. CRIMINAL LAW—PLEA-TAKING PROCEEDINGS—COMPETENCE TO
   PLEAD—COMPETENCE TO STAND TRIAL.

   The statutory standards for determining a defendant's compe-
   tence to stand trial are equally applicable to a defendant's
   competence to plead.

3. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—COMPETENCE TO
   PLEAD—PRIOR DETERMINATION OF COMPETENCE—PLEA-TAKING
   PROCEEDINGS.

   The competence of a defendant to stand trial or to plead is an
   ongoing concern and, therefore, a trial court should not place
   absolute reliance on a prior competence determination; a court,
   during a plea-taking proceeding, must recognize its obligation
   to render a separate finding of competence at the time and
   place a plea is offered.

4. CRIMINAL LAW—PLEA-TAKING PROCEEDINGS—TRIAL COURT RECORDS
   —COMPETENCE TO PLEAD—EVIDENCE OF INCOMPETENCE.

   A trial court should provide, where the record provides signifi-
   cant evidence of possible incompetence, a record of its delibera-
   tions at a plea-taking proceeding rather than merely allowing

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 497–502.
[2–7] 21 Am Jur 2d, Criminal Law §§ 32, 62–74.

its acceptance of the plea to serve as an implied finding of a defendant's competence to plead.

5. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—COMPETENCE TO PLEAD—EVIDENCE OF INCOMPETENCE—HEARINGS—APPEAL AND ERROR.

The issue of a defendant's incompetence can only be raised by evidence of incompetence and because competence is an ongoing matter it is appropriately presented whenever evidence of incompetence appears, whether before, during, or after trial; an appellate court may order a new trial where evidence of incompetence is presented and no hearing has been held.

6. CRIMINAL LAW—TRIAL COURTS—PLEA-TAKING PROCEEDINGS—COMPETENCE TO PLEAD—EVIDENCE OF INCOMPETENCE—APPEAL AND ERROR.

A trial court may not accept a defendant's plea, without a hearing to determine the defendant's competence, where the defendant has been examined but no competence hearing has been held; but where a prior competence hearing has been conducted, the trial court's duty will depend on whether competence to plead is explicitly raised, either by defense counsel, by the behavior of the defendant or by evidence on the record; therefore, a defendant's plea of nolo contendere must be vacated where it is apparent from the judge's remarks that he entertained serious doubts about the defendant's competence but did not recognize his ability to make a determination of competence to stand trial and where a review by the Court of Appeals convinces the Court that the defendant did not understand the nature of the proceedings or the consequences of his plea.

DISSENT BY J. H. GILLIS, P. J.

7. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—COMPETENCE TO PLEAD—PLEA-TAKING PROCEEDINGS—PSYCHIATRIC TREATMENTS.

*A trial judge, after a defendant has been examined at the forensic center for a competence evaluation and found competent to stand trial, need not reevaluate the defendant's competence at each subsequent proceeding unless unusual facts are called to the court's attention which would warrant a further determination of competence; where a trial judge at a plea-taking proceeding recommends that a defendant be given psychiatric treatment in prison, it does not denote that the trial judge has serious doubts about the defendant's competence.*

Appeal from Eaton, Richard Robinson, J. Submitted April 9, 1976, at Grand Rapids. (Docket No. 23577.) Decided July 20, 1976.

Norman Matheson was convicted, on his plea of nolo contendere, of carrying a weapon in a motor vehicle. Defendant appeals. Plea vacated and matter remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David L. Smith,* Prosecuting Attorney, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the people.

*Reid & Reid, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and N. J. KAUFMAN and E. A. QUINNELL,* JJ.

N. J. KAUFMAN, J. Defendant was originally charged with kidnapping, MCLA 750.349; MSA 28.581, and with carrying a weapon in a motor vehicle, MCLA 750.227; MSA 28.424. On January 7, 1975, defendant's plea of nolo contendere to the crime of carrying a weapon in a motor vehicle was accepted by the Eaton County Circuit Court. The court subsequently sentenced defendant to a term of from 3 to 5 years in prison with the recommendation that he receive psychiatric counseling. Defendant now appeals of right.

On appeal defendant propounds two claims of error, one of which merits discussion. In this claim, defendant argues that the court erred in accepting his plea when it believed or had reason to believe that defendant was not competent to plead. This contention requires a brief recitation of the proceedings in this case.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Prior to the preliminary examination, the circuit court, upon the stipulation of the parties, ordered defendant committed to the forensic center for a competency evaluation. The results of that evaluation were communicated to the court in the form of a diagnostic report. Although the examiner reported the presence of "moderate mental illness", he decided that the statutory test of competence had been satisfied, MCLA 767.27a; MSA 28.966(11).[1] A hearing on the question was conducted on November 14, 1974. The diagnostic report was offered and received by stipulation as the only evidence at the hearing. Based solely on that report, the court found the defendant mentally competent to stand trial and remanded the case for preliminary examination. Defendant did not object to the finding of competence nor did he file an interlocutory appeal on that finding.

At the plea-taking, the court, with both parties' approval, examined the preliminary examination transcript. This transcript disclosed the bizarre facts on which the charges against defendant were founded. At the preliminary examination, Jane Lindsey, a friend of the defendant, testified that defendant came to her house in the early morning hours of October 17, 1974, and requested aid from Mrs. Lindsey and her husband. Defendant, who was accompanied by his wife and three small children, professed fear for his life and the lives of his family. He stated that he had started a gang war and that a "contract" had been taken out on his life. Defendant told the Lindseys that, on the way to their house, he had been involved in a high speed auto chase. During the conversation, defendant showed the Lindseys a .38-caliber pistol.

---

[1] Repealed by 1974 PA 258; MCLA 330.1001 *et seq.;* MSA 14.800(1) *et seq.,* effective August 6, 1975.

The Lindseys helped defendant hide his car and took him and his family to the cottage of a friend. When the defendant suggested that everyone accompany him in one of the residents' van, most of the group objected. It was at this point that defendant first suggested that he could not allow anyone to remain behind. Mr. Lindsey managed to get out, which prompted defendant to tell the others he didn't care because he would get publicity. The remainder of the group then got into the van and drove away. After traveling for a time one of defendant's friends convinced defendant that he should be allowed to leave and was dropped off along the roadway. The police were then notified. When the van was finally spotted by police, defendant indicated that he was a CIA agent and had nothing to fear from the police. Nevertheless he ordered his wife to elude the police and run their roadblock, but she was unsuccessful in this attempt.

The rule governing claims such as defendant's, GCR 1963, 785.7(2), requires that

"[t]he Court shall not accept a plea of * * * nolo contendere without personally addressing the defendant and determining that the plea is freely, understandingly and voluntarily made."[2]

This determination need not be made in any particular manner and "may be concluded from the judge's acceptance of the plea even though he makes no separate finding of fact". *Guilty Plea Cases,* 395 Mich 96, 126; 235 NW2d 132 (1975). As with most matters dependent on the judge's ability to personally assess the behavior of a defendant, the determination of competence is consigned to

---

[2] Superseded and replaced by order of Supreme Court, on November 7, 1975, to be effective December 7, 1975.

his discretion. In accepting defendant's plea, the court here made no explicit finding of competence, nor did it make any record on the issue.

On appeal, defendant argues that, in concluding defendant was competent to plead, the trial court erroneously relied on the earlier determination that he was competent to stand trial. Defendant contends that competence to plead involves a "different, higher standard" than that utilized to assess competence to stand trial.

In support of his argument, defendant cites the Ninth Circuit Court of Appeals decision in *Sieling v Eyman,* 478 F2d 211 (CA 9, 1973). In *Sieling,* after he had been deemed competent to stand trial, defendant changed his plea to guilty. The court made a brief inquiry into his understanding of the plea proceeding and accepted the plea. On appeal, the Court held that a finding of competence to stand trial would not suffice as a finding of competence to plead guilty. The *Sieling* Court reasoned that, whereas the former determination concerned a defendant's ability to understand the proceedings and assist in his defense, the question of competence to plead required a determination of a defendant's ability to competently waive important constitutional rights. In so holding, the Court relied on *Westbrook v Arizona,* 384 US 150; 86 S Ct 1320; 16 L Ed 2d 429 (1966). In *Westbrook,* a somewhat cryptic per curiam decision, the United States Supreme Court held that, although a state court had found the defendant competent to stand trial, a further inquiry was necessary to determine if he was competent to waive his constitutional right to counsel.

Plaintiff's reply to defendant's novel and well-articulated argument is completely unresponsive and unhelpful. Plaintiff merely makes the facile

argument that the plea should be affirmed because
the trial court was in a better position to assess
defendant's competence than is this Court. This
argument ignores the possibility raised by defend-
ant's appellate claim that the trial court applied
an incorrect standard in determining defendant's
competence. It also places this Court in the un-
happy position of having to make the argument of
plaintiff's appellate counsel for him.

The *Sieling v Eyman* rationale has been ex-
pressly rejected in four other jurisdictions. Prior to
*Sieling*, the Tenth Circuit Court of Appeals held
that:

"The test of mental competency *at the time of trial or
the entering of a plea* in a criminal case is that the
accused have 'sufficient present ability to consult with
his lawyer with a reasonable degree of rational under-
standing—and whether he has a rational as well as
factual understanding of the proceedings against him.'
*Dusky v United States,* 362 US 402; 80 S Ct 788; 4 L Ed
2d 824 (1960)." *Wolf v United States,* 430 F2d 443, 444
(CA 10, 1970). (Emphasis supplied.)

*Wolf* was subsequently followed by the Fifth Cir-
cuit Court of Appeals which rejected a defense
contention that the Court adopt a higher standard
for determining competence to plead than for as-
certaining competence to stand trial. *Malinauskas
v United States,* 505 F2d 649, 653–4 (CA 5, 1974).

In *People v Bassett,* 25 Ill App 3d 927; 323 NE2d
607 (1975), the court considered the interplay of
the *Sieling, Wolf,* and *Malinauskas* cases and de-
cided to apply the same competence standard to
both trial and plea proceedings. The *Bassett* court
founded its holding on three grounds: (1) unlike

*Sieling,* prior proceedings in *Bassett* had not presented a substantial question as to the defendant's competence; (2) the procedural rule in *Sieling* provided the trial court with little information concerning the defendant's competence; (3) the *Wolf* and *Malinauskas* cases were more in conformance with applicable Illinois precedent.

Having analyzed these and other relevant decisions and reviewed applicable Michigan precedent, we are convinced that the statutory standards for determining competence to stand trial are equally applicable to competence to plead. We accordingly reject defendant's request to apply a higher standard to plea-taking proceedings. However, we also find that, because competence is an ongoing concern, a trial court should not place absolute reliance on a prior competence determination. The court must recognize its obligation to render a separate finding of competence at the time and place the plea is offered. More importantly, where the record provides significant evidence of possible incompetence, the trial court should provide a record of its deliberation rather than merely allowing its acceptance of the plea to serve as an implied finding of competence.

Although the issue of competence to stand trial has received recent, extensive treatment, few Michigan cases have discussed competence to plead. At the time defendant entered his plea, the law provided that:

"A person is incompetent to stand trial within the meaning of this section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a

rational or reasonable manner." MCLA 767.27a(1); MSA 28.966(11)(1).[3]

Recent cases concerning competence to stand trial have stressed that the issue of incompetence can only be raised by evidence of incompetence. *People v Blocker,* 393 Mich 501, 508–510; 227 NW2d 767 (1975), *People v Lucas,* 393 Mich 522, 527–529; 227 NW2d 763 (1975). These cases indicate that competence is an ongoing matter and is appropriately presented whenever evidence of incompetence appears, whether "before, during or after the trial". *People v Blocker, supra* at 510. Where such evidence is presented, and no hearing has been held, appellate courts may order a new trial. *Id.* In a similar context, the United States Supreme Court noted,

"Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope v Missouri,* 420 US 162, 181; 95 S Ct 896, 908; 43 L Ed 2d 103, 119 (1975).

This Court has, on one occasion, utilized the statutory standards for trial competence as guidelines for competence to plead. In *People v Perkins,* 25 Mich App 184; 181 NW2d 1 (1970), we rejected defendant's claim that his plea be set aside because he had failed to allege facts showing that he

---

[3] This section was repealed by 1974 PA 258, effective one year after August 6, 1974. The new provision provides that a defendant:

"shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial." MCLA 330.2020(1); MSA 14.800(1020)(1).

"did not in fact understand the nature of the charge against him or the proceedings of the guilty plea or sentence". *Id.* at 185.

We also find our opinion in *People v Lucas,* 47 Mich App 385; 209 NW2d 436 (1973), to be especially instructive to the instant inquiry. In *Lucas,* defendant was examined at the Center for Forensic Psychiatry and a report concerning his competence to stand trial was issued. Before a hearing could be held, defendant entered a plea of guilty which the court subsequently accepted. On appeal, this Court held that the trial court erred by accepting the plea without a competency hearing. After the Court held that defendant could not waive such a hearing, it remanded the matter for a determination of whether defendant was competent at the time he pled.

The application of this precedent to the facts in this case manifests the difficulties involved in assuring that a defendant is competent throughout the proceedings against him. Unlike the defendant in *People v Lucas, supra,* defendant here was given a competency hearing a month before he entered his plea. Our initial inquiry must, therefore, focus on the effect of a prior finding that defendant is competent to stand trial on a later question regarding his competence to plead. We recognize that there are quantum differences between a trial and a plea proceeding. The plea-taking is, effectively, a trial compressed into a few moments. Significant rights must be waived in an environment which may lend itself to a rote procedure. Despite these differences, however, we conclude that a finding that the defendant is able to comprehend the proceedings against him involves a conclusion that he is competent to understand all proceedings, not just a trial.

Our second problem is that of determining the effect of the finding that defendant is competent to stand trial on the inquiry concerning whether he is competent to plead. The court rule requirement that the court make an independent inquiry into the voluntariness of the plea combined with the ongoing nature of competence make it clear that the court cannot merely adopt the prior finding of competence. What, then, should the trial court do? Should it, as defendant contends, hold another full competency hearing? Should it, as the Supreme Court indicated in the *Guilty Plea Cases, supra,* merely allow its acceptance of the plea to represent a finding of competence unsupported by any record? In the first instance, we are loathe to add another hearing to the many now required, especially where the GCR 1963, 785.7(2) requirements, in effect, make the plea-taking a type of competency hearing. However, where evidence indicates the possibility of incompetence, the absence of a record makes appellate review impossible.

How a trial court or an appellate court considers such a question will depend on the setting in which it arises. More specifically, the inquiry must focus on whether the question of competence to plead is explicitly raised by defense counsel and on whether evidence of incompetence appears on the record. In addition to the precedent we have detailed above, we find guidance in the judicial treatment accorded the cases on which defendant has relied, *Sieling v Eyman, supra,* and *Westbrook v Arizona, supra.* In *Sieling,* the Ninth Circuit Court of Appeals applied Arizona law and required a second hearing to ascertain defendant's competence to plead. Subsequently, the Arizona courts issued a series of opinions which held that a separate hearing was not required to determine a

defendant's ability to waive a constitutional right. *State v DeCello,* 111 Ariz 46; 523 P2d 74 (1974), *State v Ellison,* 111 Ariz 167; 526 P2d 706 (1974), *State v Bates,* 111 Ariz 202; 526 P2d 1054 (1974). Arizona, like Michigan, requires the court to determine the voluntariness of the plea. The *DeCello, Ellison* and *Bates* opinions held that this determination encompassed all questions of competence and that, therefore, only the plea proceeding was necessary.

A number of recent opinions have disagreed with the *Sieling* Court's use of *Westbrook v Arizona* to require a higher standard and separate hearing for competence to plead. *Westbrook* has been read more narrowly not as holding that a separate hearing is required but rather that a finding on competence to stand trial does not, in and of itself, foreclose the issue of competence to waive counsel. See *United States ex rel Konigsberg v Vincent,* 388 F Supp 221, 225 (SDNY 1975). We find this view consistent with a policy recognizing the ongoing nature of competence. In *Carvalho v Olim,* 55 Hawaii 336, 343 fn 2; 519 P2d 892, 897 fn 2 (1974), the Court read *Westbrook* as requiring not a separate hearing but an "additional effort" by the court where the defendant may be of subnormal intelligence or where there is a "bona fide doubt" as to his competence. See also *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966), *Rees v Peyton,* 384 US 312; 86 S Ct 1505; 16 L Ed 2d 583 (1966).

These cases, read in the context of Michigan precedent, support certain guidelines. Where defendant has been examined but no competency hearing has been held, the court may not accept defendant's plea without a hearing to determine his competence. *People v Lucas,* 47 Mich App 385;

209 NW2d 436 (1973). Where, as here, a prior competency hearing has been conducted, the trial court's duty will depend on whether competence to plead is explicitly raised, either by defense counsel, by the behavior of defendant or by evidence on the record. Where competence has been placed in issue by one of these means, the trial court must recognize its ongoing duty to ascertain the competence of the defendant and make a specific determination. A defendant may raise the court's failure to make such a determination only if evidence of incompetence is present, and the decision of the court will be overturned only if it represents an abuse of discretion.

We find that the instant facts require us to vacate defendant's plea for two reasons. First, it appears from the judge's remarks and from his recommendation that defendant be given psychiatric treatment in prison that the trial judge entertained serious doubts about defendant's competence but did not recognize his ability to make an independent determination of competence. He apparently felt bound by the earlier finding of competence to stand trial. Second, our own review of the record convinces us that defendant did not understand the nature of the proceedings or the consequences of his plea. His responses manifested a state of confusion which belied the claimed voluntariness of his plea. During the plea-taking, defendant appeared confused and had to be continually prompted and led by the judge and by his attorney. As an example:

"*The Court:* Do you understand when you waive your right to a trial, you waive your right to all the constitutional safeguards which have been built into that trial for your protection, and I'll tell you more about those in a moment.

*"Mr. Matheson [defendant]:* (Shaking head.) I don't,—

\* \* \*

*"Mr. Bean [Defense Counsel]:* What the Court is asking you, if you waive your right to a trial, that you waive your constitutional rights which go with having a trial.

*"Mr. Matheson:* —Waive my constitutional rights?

\* \* \*

*"Mr. Matheson:* —Yes.

*"The Court:* Do you understand that if you are to plead Not Guilty, you would be entitled to a trial, either before me without a jury or, at your wish, a trial before a jury of twelve people selected at random from this county.

"Do you understand that?

*"Mr. Matheson:* I'm not sure.

*"Mr. Bean:* Well, the Judge says you have a right to a trial, either before the Court or with twelve jurors from the county as a jury trial. You have that right. In other words, you could have your case heard before the Judge without a jury or with a jury.

*"Do you understand you have that right?*

*"Mr. Matheson:* I understand I have that right, yes."

This confusion was further manifested by defendant's behavior at sentencing:

*"Mr. Matheson:* I don't even understand what's happening to me right now.—What's going to happen to me, now?—I just don't understand anything.—I just can't understand what's happening.

*"The Court:* Would you rather not sign the form, sir?

*"Mr. Matheson:* No, I want to appeal it. But, what was my sentence?

*"Mr. Bean:* The Judge sentenced you to, from three to five years with the Department of Corrections, and that you receive psychiatric help.

*"Mr. Matheson:* What's the Department of Corrections?

"*The Court:* This is the State Institution for people convicted of crimes.

"*Mr. Matheson:* Is it a mental hospital?

"*The Court:* It covers everything.

"*Mr. Matheson:* Where is that at, sir?

"*The Court:* What is the Department of Corrections?

"*Mr. Matheson:* Yes.

"*The Court:* It's our prison system.

"*Mr. Matheson:* Prison?

"*The Court:* At least as far as this sentence is concerned.

"*Mr. Matheson:* Oh, no."

The unusual facts brought out at the preliminary examination and examined by the court served as an additional indication of defendant's instability and inability to cope with reality.

As such, we vacate defendant's plea and remand for proceedings consistent with this opinion.

E. A. QUINNELL, J., concurred.

J. H. GILLIS, P. J. *(dissenting)*. Judge KAUFMAN has set forth the basic facts governing this case and I agree with his determination that only one of the two claims of error merit discussion.

After the defendant was referred to the forensic center for a competency evaluation, the results of that evaluation disclosed "moderate mental illness", and the diagnostic report having been offered and received by stipulation, the court found the defendant mentally competent to stand trial. In my view a trial judge following such a determination of competency need not reevaluate the defendant's competency at each subsequent proceeding unless unusual facts are called to the court's attention which would warrant a further determination of competency. When a judge rec-

ommends that a defendant be given psychiatric treatment in prison, I do not think that this denotes that the judge has serious doubts about defendant's competency nor do I believe that the trial court in the instant case did not recognize his ability to make a new independent determination of whether or not a new competency hearing was warranted.

I have examined the trial transcript and in particular that portion of the transcript of the proceedings quoted in Judge Kaufman's opinion. It would appear to me to be very similar in nature to those that I have reviewed in many cases. I cannot conclude from a reading of this transcript that the defendant's questions warranted the placing of the trial court on notice that he should at that point decline to accept a guilty plea; nor do I believe that the conduct of the defendant at the plea proceedings and at sentence, as evidenced by his questions and answers, should have put the court on notice that the defendant should have been returned to the forensic center for reevaluation.

I would affirm the defendant's plea-based conviction.