**JAYDEE BRATHWAITE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2016-0040

Supreme Court of the Virgin Islands

July 20, 2017

Kele Onyejekwe, Esq., Appellate Public Defender, St. Thomas, USVI,
 *Attorney for Appellant.*

SU-LAYNE U. WALKER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 20, 2017)

SWAN, *Associate Justice.* Appellant, Jaydee Brathwaite, appeals the Superior Court's July 22, 2016 judgment and commitment.[1] Brathwaite entered a plea of no contest to one count of first-degree assault, but he now contends that his plea was involuntary. Brathwaite also requests that this Court reduce his sentence. For the reasons explicated below, we affirm the judgment and commitment entered by the trial court.

## I. FACTS AND PROCEDURAL HISTORY

In an August 2015 information, Brathwaite was charged with two counts of first-degree rape and one count of first-degree assault. In February of the following year, pursuant to a court order, Brathwaite underwent a psychiatric evaluation. The psychiatrist determined that Brathwaite "was probably suffering from a form of mental disorder," at the time of the offenses. (JA 30.) However, the psychiatrist opined that Brathwaite did not commit the alleged crimes as a consequence of any mental disorder. The People extended a plea offer to Brathwaite, which provided that if Brathwaite entered a guilty plea to first-degree assault, the People would dismiss the two rape counts, and recommend a sentence of 15 years imprisonment. Brathwaite declined the offer.

Nevertheless, Brathwaite later contacted his attorney, requesting that they discuss the People's offer. On the morning of Brathwaite's pre-trial hearing, Brathwaite and his attorney discussed the offer, Brathwaite executed a plea agreement in accordance with its terms, and Brathwaite's trial counsel filed a motion for a change of plea. A change-of-plea hearing was scheduled for later that afternoon. At the change-of-plea hearing, the judge informed Brathwaite that she would ask him a series of questions to ensure that he was entering the plea of his free will. First, the judge

---

[1] *Nunc pro tunc* to June 14, 2016.

questioned Brathwaite about how he felt physically and his regimen for his prescribed medications. The court further asked Brathwaite whether his medication was preventing him from understanding the court's questions and the plea proceedings. Brathwaite responded, "[t]hey don't at all. They are really light meds." (JA 85.) The court then asked Brathwaite about his educational background, whether he was under the influence of alcohol or controlled substances, and whether his attorney had reviewed the plea agreement with him. Thereafter, the court engaged Brathwaite in an extensive plea colloquy which addressed, among other matters, the terms of the plea agreement, the factual basis for the first-degree assault count, various consequences of the plea, Brathwaite's right to a jury trial, and the constitutional rights which Brathwaite would relinquish in entering his plea. Throughout the colloquy, Brathwaite continually indicated that he understood both the proceedings as well as the conditions and consequences of the plea.

The judge then informed Brathwaite that the charge of first-degree assault, to which Brathwaite had agreed to plea guilty, was punishable by a maximum sentence of 15 years imprisonment. When the court asked Brathwaite whether he was agreeing to plead guilty because he was in fact guilty, Brathwaite explained that he believed that the victim had assaulted him but that he had also assaulted her. Brathwaite stated that he was therefore "in agreeance" with the first-degree assault charge "totally a hundred percent." (JA 93-94.) After the court clerk recited count three into the record — assault in the first degree — the clerk asked Brathwaite whether he wished to plead "not guilty, guilty or no contest." Brathwaite responded, "[n]o contest?" and further stated, "[d]efinitely not guilty of raping anybody." (JA 103.) The court explained the elements of the first-degree assault charge and requested the clerk to read the charge again. Brathwaite responded, "[n]ot guilty?" (JA 105.) Brathwaite's trial attorney requested the court's permission to confer with Brathwaite, and the court assented.

When the judge resumed the colloquy, Brathwaite indicated that he wished to enter a no contest plea. The court explained to Brathwaite that a no contest plea would result in a criminal conviction. Brathwaite indicated that he understood that fact, but he later asked, "[h]ow do I not get convicted?" (JA 108.) He also added that he "want[ed] to work with the [c]ourt." (JA 108.) The court responded, "[w]ell — no, Mr. Brathwaite, I don't want to do anything that you don't understand,

and I don't want to do anything that is not voluntary." (JA 108.) The court again explained to Brathwaite that a no contest plea would result in a conviction, and the court also explained that he could be sentenced to the statutory maximum imprisonment sentence for first-degree assault. Brathwaite affirmed that he understood. The court then asked Brathwaite whether, given that knowledge, he still wished to persist with the plea of no contest. Brathwaite confirmed that he wished to proceed, and the court accepted Brathwaite's plea of no contest.

At Brathwaite's sentencing hearing, the court received testimony from various parties. The court also noted that it had reviewed letters submitted on behalf of both Brathwaite and the victim. Lastly, the court acknowledged that although Brathwaite had a history of mental health issues, the psychiatrist who had evaluated Brathwaite had not concluded that he committed the offense because of any mental defect. The court sentenced Brathwaite to 15 years imprisonment, in accordance with the plea terms.[2] Approximately one month after he was sentenced, Brathwaite filed a motion requesting the Superior Court to reduce his sentence, which the court denied. Brathwaite also filed a timely appeal of the judgment and commitment.

## II. JURISDICTION AND STANDARD OF REVIEW

Title 4, section 32(a) of the Virgin Islands Code provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The Superior Court's July 22, 2016 judgment and commitment constitutes a final order, thereby vesting this Court with jurisdiction.

The trial court's application of law is subject to plenary review, while findings of fact are reviewed for clear error. *Tyson v. People*, 59 V.I. 391, 400 (V.I. 2013). We review the court's imposition of a sentence "solely for abuse of discretion unless the Superior Court bases its decision on application of legal precepts, in which case review is plenary." *Williams v. People*, 59 V.I. 1024, 1031 (V.I. 2013).

---

[2] Brathwaite was credited for the time he had already served while incarcerated and awaiting trial, and he was also assessed $75 in court costs.

## III. DISCUSSION

### A. Voluntariness of Brathwaite's Plea.

■ First, we explicate the applicable standard for analyzing Brathwaite's argument that his plea ran afoul of the constitution. In order for a guilty or nolo contendere plea to " 'comply with the requirements of the Due Process Clause of the [Fourteenth] Amendment, it must be knowing, voluntary and intelligent.' " *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 458 (V.I. 2012) (quoting *Gov't of the V.I. v. Greenaway*, 379 Fed. Appx. 247, 250 (3d Cir. 2010)). Accordingly, the defendant must be " 'advised of and understand the direct consequences of a plea,' " *Bryan*, 56 V.I. at 458 (emphasis omitted) (quoting *United States v. Tidwell*, 521 F.3d 236, 251 (3d Cir. 2008)), and the plea must "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). To ascertain the validity of Brathwaite's plea, this Court considers "all of the relevant circumstances surrounding [the plea]." *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

### 1. Brathwaite's consultation with trial counsel.

First, Brathwaite's appellate counsel argues that his plea was not voluntary because it was not accomplished with the assistance of counsel. As support for this assertion, counsel contends that Brathwaite neither informed his trial attorney that he intended to enter a no contest plea, nor discussed the plea with his attorney prior to the commencement of the change-of-plea hearing. Counsel posits that this failure illustrates that the voluntariness of Brathwaite's plea "is in serious doubt." (Appellant's Br. 11.)

Brathwaite's argument is belied by the trial court record. First, Brathwaite and his attorney discussed the plea offer prior to the commencement of the change-of-plea hearing, and Brathwaite signed the plea agreement. During the hearing, Brathwaite confirmed that his attorney had both reviewed the plea with him and explained the plea and its consequences. Brathwaite also attested that he understood his attorney's explanation of the plea. Moreover, Brathwaite recited his understanding of the terms and conditions of the plea, including the People's recommended sentence of 15 years incarceration.

614

■■ We recognize that while the hearing was underway, Brathwaite converted his plea from "guilty" to "no-contest," and his trial attorney was not previously aware of Brathwaite's intention to do so. Nevertheless, we are not at all persuaded that this renders Brathwaite's plea involuntary. The record demonstrates that when it appeared that Brathwaite was considering a no contest plea, trial counsel requested another opportunity to confer with Brathwaite, which the court allowed. Insofar as Brathwaite implies that he could not have been adequately advised at that point, we disagree. The validity of Brathwaite's plea does not hinge on the precise juncture at which he conferred with his attorney prior to entering his plea. Nor is it determined by the amount of time Brathwaite and his attorney spent in consultation. *See Rios v. State*, 281 Ga. 181, 637 S.E.2d 20, 22 (2006); *Lupo v. United States*, 435 F.2d 519, 523 (8th Cir. 1970); *State v. Knerr*, 1968-NMCA-022, 79 N.M. 133, 440 P.2d 808, 810 (Ct. App. 1968). Rather, this Court is concerned with whether " 'the defendant underst[ood] the nature of the charge against him, and [whether] the plea [wa]s voluntarily made.' " *Tindell v. People*, 56 V.I. 138, 152 (V.I. 2012) (quoting Superior Court Rule 126).

When the court resumed the plea colloquy, the trial judge further questioned Brathwaite, and the court record amply demonstrates that Brathwaite entered the plea of his own accord, with comprehension of the consequences of the plea. First, the court explained the nature of the no contest plea. On two occasions, Brathwaite explicitly represented that he understood that the no contest plea would result in a criminal conviction. The trial judge asked Brathwaite whether he understood that he could still be sentenced to the maximum jail time permitted by law for the charge of first-degree assault. Brathwaite responded affirmatively. Thereafter, the court inquired:

> The court: And knowing that and understanding that, do you still wish to plead no contest to Count Three charging you with first degree assault?
> Brathwaite: Yes, Your Honor.

(JA 110.)

Accordingly, we conclude that although Brathwaite changed his plea from guilty to no contest, he properly entered his plea with consultation and advice from counsel.

 

### 2. Brathwaite's mental health history and medication regimen.

██ Brathwaite argues that given his mental illness, as well as his medication regimen at the time of the plea, this Court cannot consider his plea voluntary. Brathwaite posits that his prescribed medications "can cause confusion," (Appellant's Br. 12) which was manifested in the plea colloquy. Having examined the record, we conclude that neither the defendant's mental health nor his medications impinged upon his capacity to enter a voluntary plea.

██ Preliminarily, we agree that when a defendant is entering a plea, and the trial judge is aware that the defendant is medicated, "[the] court should ascertain the effect, if any, of the medication on the defendant's ability to make a knowing and voluntary plea." *United States v. McDaniels*, 340 Fed. Appx. 886, 888 (4th Cir. 2009); *United States v. Rossillo*, 853 F.2d 1062, 1066 (2d Cir. 1988) ("[I]f there is *any* indication . . . that defendant is under the influence of any medication, drug or intoxicant, it is incumbent upon the . . . court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty.").

Here, when Brathwaite confirmed to the trial judge that he was taking prescribed medication, the judge both questioned him about how he felt physically and ensured that the medication was not adversely impacting his ability to proceed with the plea. The court asked Brathwaite about the type of medications he had been prescribed, their purpose, the prescribing doctor, and the frequency with which Brathwaite ingested the medication. When Brathwaite informed the court that he took his medication twice per day, the court persisted as follows:

> The court: Even though you take those medications or — do you have any trouble understanding my questions?
>
> Brathwaite: No, Your Honor.
>
> The court: Do you find that the medications that you're taking interfere with your being able to understand what's going on?
>
> Brathwaite: No, I don't.
>
> The court: Okay.
>
> Brathwaite: They don't at all. They are really light [m]eds.
>
> The court: Sorry?
>
> Brathwaite: They are really, really light [m]eds.

(JA 84-85.) There is simply no evidence that Brathwaite's medication impeded his ability to enter a voluntary plea.

Similarly, we do not accept Brathwaite's argument that his plea was involuntary due to mental illness, nor do we find merit in Brathwaite's spurious complaint that the court failed to make an independent determination that he was competent to tender his no contest plea. The trial court continually assessed whether Brathwaite understood the plea proceedings, engaging him in an extensive plea colloquy regarding the terms of the plea agreement, the factual basis for the plea, the direct consequences of the plea, and the maximum sentence to which Brathwaite was subjected. Brathwaite indicated that he understood the plea offer, he affirmed that his lawyer had explained the consequences of his plea, and he confirmed that he was satisfied with the legal representation he had received. When the court expounded on the litany of constitutional rights that Brathwaite would renounce in entering his plea, as well as the adverse consequences of the plea, Brathwaite again indicated that he understood. In response to the court's questioning on whether he had received any promises in exchange for his plea or had been threatened or forced to enter into the plea, Brathwaite confirmed that his plea was not so induced.

In fact, from the inception of the plea proceedings, the colloquy is replete with instances where the judge went beyond rote questioning to ensure that Brathwaite understood the salient aspects of the hearing. For instance, when the hearing began, the court asked Brathwaite, "how do you feel right now?" (JA 83.) When Brathwaite indicated to the court that he had not consumed any controlled substances in the preceding 24 hours, the judge ensured that he understood her question by asking Brathwaite to provide an example of a controlled substance. When counsel for the People recited the plea recommendation, the court requested that Brathwaite state his understanding of the plea agreement, using *his* verbiage.

We also note that Brathwaite consistently offered cogent responses to the court's questions. In replying to the court's enquiry about how he felt physically, Brathwaite stated, "I feel healthy." (JA 83.) When asked about his level of education, Brathwaite informed the court, "I have 12 college credits," (JA 85) before identifying the institutions at which he had acquired those credits. When the court requested that Brathwaite provide an example of a controlled substance, he responded, "[c]ocaine, heroin."

617

(JA 86.) When the court probed regarding Brathwaite's understanding of the initial plea agreement for the guilty plea, Brathwaite responded, "I agree to plead guilty to the third count, which is first degree assault, which nullifies the other two charges. . . . And it says they recommend a 15-year prison sentence." (JA 90.) When the court asked Brathwaite whether he had received a copy of the plea offer in the form of a letter, Brathwaite answered, "[i]t was in the same format in a packet. I guess it wasn't in a letter, so to speak, but it was stapled together in a packet." (JA 91.) In sum, it is exceedingly clear that the trial court made certain that Brathwaite was sufficiently competent to enter his plea. And indeed, the court did not accept Brathwaite's plea until a meticulous examination revealed that no mental impairment negated the knowing, voluntary and intelligent character of the plea.

Brathwaite also argues that he was confused about the proceedings, and we must therefore deem his plea involuntary. As support for this contention, Brathwaite cites to *People v. Matheson*, 70 Mich. App. 172, 245 N.W.2d 551 (Ct. App. 1976). But the analogizing of this case to *Matheson* is simply unavailing. In *Matheson*, the appellate court vacated the defendant's plea because it was clear that the defendant "did not understand the nature of the proceedings or the consequences of his plea," and the defendant's "responses manifested a state of confusion which belied the claimed voluntariness of his plea." *Id.* at 557. Our review of that case reveals that the defendant there did not comprehend fundamental aspects and implications of the plea proceedings. The Michigan defendant explicitly stated that he did not understand that he would be waiving constitutional rights by entering his plea, and he further indicated that he was not sure that he understood he would be waiving his right to a jury trial. *Id.* During the sentencing proceedings, that defendant commented, "I don't even understand what's happening to me right now. — What's going to happen to me, now? — I just don't understand anything. — I just can't understand what's happening." *Id.* Additionally, he asked questions such as "[w]hat is the Department of Corrections?" and "[w]hat was my sentence?" *Id.* The plea colloquy in this case is not remotely comparable to the abject state of confusion of that Michigan defendant regarding his plea proceedings.

Brathwaite also claims that the following exchange during the plea colloquy serves as a basis for reversal:

> The court: I want to make sure you understand what it means when you say "no contest."
>
> Brathwaite: Doesn't that mean that I'm not pleading guilty or not guilty? But if that's — if that violates my plea agreement that I signed this morning then —
>
> The court: No, no, no. It doesn't violate it, but it is still — it still results in a conviction. It means you're not —
>
> Brathwaite: How do I not get convicted?
>
> The court: Excuse me?
>
> Brathwaite: How do I not get convicted?
>
> The court: You want to know how you don't get convicted?
>
> Brathwaite: I want to work with the [c]ourt, yeah.

(JA 108.)

In responding to Brathwaite's statement that he "want[ed] to work with the court," the trial judge seems to have bypassed Brathwaite's previous question regarding how he could avoid being convicted. Brathwaite suggests that he would have interpreted this to mean that the court *wanted* him to enter a no contest or guilty plea and not request a trial, and he therefore plead involuntarily. (Appellant's Br. 14.)

This argument is utterly erroneous. First, when Brathwaite stated that he "want[ed] to work with the [c]ourt," the trial judge immediately cautioned, "[w]ell — no, Mr. Brathwaite, I don't want to do anything that you don't understand, and I don't want to do anything that is not voluntary. That's why we have this . . . long discussion." (JA 108.) At the very commencement of the hearing, the court informed Brathwaite that the purpose of the colloquy was to establish a record that he was entering the plea "of [his] own free will." (JA 81.) When the court asked Brathwaite whether he understood that concept, he responded, "[y]es, ma'am. Yes, Your Honor." (JA 81.) Additionally, while it might have been prudent of the court to reiterate to Brathwaite that he was not obligated to plead guilty or no contest, Brathwaite was fully aware that he had a right to a jury trial. The court had previously explained this to Brathwaite at length, addressing his right to the presumption of innocence, his right against self-incrimination, his right to call witnesses to testify on his behalf during a trial, and his right to have an attorney represent him at trial. Brathwaite stated on the record that he understood that he possessed

those rights. Therefore, although he may have been ambivalent about the plea at this juncture, the insinuation that Brathwaite's plea was an involuntary act aimed at complying with some invented will of the court is preposterous.

Equally specious is Brathwaite's contention that his plea was involuntary because he confusedly entered a no contest plea so as to avoid conviction. The court asked Brathwaite, on three distinct occasions, whether he understood that a no contest plea would result in a conviction. Brathwaite responded affirmatively each time. In fact, the court went so far as to offer Brathwaite a simplified explanation that the no contest plea has the same legal effect as a guilty plea. The court stated, "I just want to make sure you understand pleading no contest has the same result as pleading guilty. . . . [I]n the end it has the same result. . . . [E]ven though you pled no contest, it still results in a criminal conviction and I can still sentence you to the maximum time in jail based upon your plea of no contest." (JA 109-110.) Brathwaite indicated that he understood. And, when the court thereafter asked Brathwaite whether he still wished to enter a no contest plea, Brathwaite indicated that he did. Given that Brathwaite repeatedly expressed his cognizance that a no contest plea would result in a conviction, we reject his suggestion that he confusedly entered a no contest plea to avoid conviction.

Lastly, we address Brathwaite's claims that we should deem his plea involuntary because he purportedly denied having committed a crime. Specifically, Brathwaite refers to his assertion to the court that he believed the victim assaulted him and that he also assaulted her. Brathwaite's appellate counsel urges this Court to construe this statement as an attestation that Brathwaite was acting in self-defense.

■ First, Brathwaite unambiguously stated that he assaulted the victim and that he was therefore "in agreeance" with the charge of first-degree assault "totally a hundred percent." (JA 93-94.) Moreover, a defendant's unwillingness to expressly admit that he/she committed a crime is hardly tantamount to an involuntary plea. As enunciated in *Alford*, 400 U.S. at 37, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." In fact, "[i]mplicit in . . . nolo contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with

grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36. Therefore, this argument is baseless. Considering the preceding circumstances, we conclude that Brathwaite was aware of the nature of the proceedings and the consequences of his plea, and that he entered a knowing, voluntary and intelligent plea of no contest.

**B. Reduction of Brathwaite's sentence.**

Next, Brathwaite urges this Court to reduce his sentence because he had an untreated mental health condition at the time of the crime. Importantly, Brathwaite does not argue that the sentence was unconstitutional, beyond the statutory maximum, or the product of any defective procedure. Instead, he merely proffers that the purpose of sentencing is to punish defendants in accordance with their level of culpability, and his mental health history reduces his level of culpability in this crime.

 "Generally, this Court will not review a sentence which falls within the bounds prescribed by the applicable statute. In that regard, the trial court's sentencing determination will be interfered with only upon a showing of illegality or abuse of discretion." *Brown v. People*, 56 V.I. 695, 699 (V.I. 2012) (citation omitted). Not only was the 15-year incarceration sentence on first-degree assault permitted by statute, but this was precisely the sentence reflected in the negotiated plea agreement. For this reason, we unhesitatingly conclude that the court's sentence does not constitute an abuse of discretion. *See Tindell*, 56 V.I. at 153 (trial court did not err in imposing a sentence which was within the range set by the sentencing statute, and which "mirrored the People's recommended sentence pursuant to the plea agreement"); *People v. Perez*, 182 A.D.2d 875, 582 N.Y.S.2d 40 (1992) (trial court did not abuse its discretion in sentencing because sentence was in accordance with plea agreement and defendant was permitted to plead guilty to a reduced charge in satisfaction of a 12-count indictment); *State v. Copenhaver*, 129 Idaho 494, 927 P.2d 884, 886 (1996) ("[A] sentence that is within the limits prescribed by statute ordinarily will not be considered an abuse of discretion.") (citation omitted); *State v. Cawley*, 1990-NMSC-088, 110 N.M. 705, 799 P.2d 574, 581 (1990) (acknowledging that there is no abuse of discretion where the sentence is "within the range afforded by the sentencing statutes").

Likewise, there was no abuse of the court's discretion given Brathwaite's mental health. The court was well aware of Brathwaite's

mental health history, but acknowledged that the psychiatrist had opined that Brathwaite did not commit the offense as a consequence of a mental disorder. *See People v. Johnson*, 131 A.D.3d 728, 728-29, 15 N.Y.S.3d 507 (2015) (trial court did not abuse its discretion by imposing maximum sentence for mentally ill defendant. Sentencing court "was fully apprised of defendant's mental health history," including the psychiatric examination determining that although defendant suffered from a psychotic disorder, he was sufficiently competent to participate in his defense). Further, our independent examination of this record does not persuade us that Brathwaite's mental health history lessens his culpability in this case. Accordingly, we decline Brathwaite's invitation to reduce his sentence.

## IV. CONCLUSION

Despite Brathwaite's history of mental illness, his plea of no contest was knowing, voluntary and intelligent. Brathwaite's sentence was both lawful and in accordance with his negotiated plea agreement with the People, and the reduction of his sentence is not warranted. Therefore, we affirm the Superior Court's July 22, 2016 judgment and commitment.