## MACON RAILWAY AND LIGHT COMPANY v.
## MASON, and vice versa.

1. In an action to recover damages for a personal injury, it is error requiring a new trial for the court to instruct the jury as to the right of a plaintiff to recover punitive damages where the tort complained of is accompanied by aggravating circumstances, when the evidence does not warrant a charge on this subject.

2. In order for the jury to assess punitive damages in such an action, it is not necessary that they should be claimed eo nomine, but it is enough that the facts alleged and proved be such as to warrant the assessment.

3. It is competent for a party to account for the absence of an eye-witness to the occurrence under investigation, that the jury may not draw any unfavorable inferences from the failure to produce and examine the witness.

4. Where the person injured is a dentist, testimony as to his capacity and efficiency in his chosen profession prior to his injury is relevant, as bearing directly upon the measure of damages.

5. One who is a graduate of a college where anatomy and physiology are taught, and who is engaged in the practice of osteopathy and has gained experience in the treatment of nervous disorders, may be examined as an expert witness, upon these facts being made to appear, notwithstanding he is not a licensed physician and does not administer drugs to his patients.

6. That the jury may clearly understand their duty with respect to reducing to its present cash value the gross amount which they may find to fairly represent the loss in earning capacity which the injured party has sustained, the court, in charging upon this subject, should make choice of language which is not calculated to confuse the jury because of inaccuracy of expression.

7. The wife of the injured party is not, because of the marital relation existing between them, and the policy of the law to preserve inviolate confidential communications between husband and wife, incompetent to testify as to the nature of the injury received by him and its effect upon his physical condition, when there is nothing to indicate that her knowledge on the subject was gained because of any confidence which he reposed in her as his wife.

8. The wife may testify to symptoms which she observed, indicating that her husband suffered from headache, but should not be permitted to generalize or state any bare conclusion based upon her observation of others who had headache, she not professing to be an expert.

Argued June 30, — Decided August 4, 1905.

Action for damages. Before Judge Hodges. City court of Macon. January 23, 1905.

The plaintiff below, J. M. Mason, instituted a suit for damages against the Macon Railway and Light Company, and recovered the sum of $2,500. The allegations of his petition were substantially as follows: On September 6, 1903, he boarded one of

the electric street-cars owned and operated by the defendant company. Two cars were coupled together, the one in front being a motor car and the other being what is commonly known as a "trailer." There were no vacant seats upon either, so he got upon the front platform of the "trailer." The conductor came to him and collected his fare, offering no objection to his riding on the platform. Within a few minutes, and while plaintiff was standing with his back towards the car ahead, the conductor reached over from the rear platform of that car for the purpose of applying the brake on the front platform of the "trailer," and in swinging the brake handle around struck the plaintiff a violent blow with it in the back and upon his spinal column. The conductor gave to him no warning or intimation of an intention to apply the brakes, although he was standing in a position where he would be injured if given no opportunity to move out of the way of the brake handle. He protested to the conductor "against being used in any such way," and the conductor "responded to [him] in an insulting and uncalled-for manner, in the full hearing of the other passengers on said car, greatly mortifying [him] and wounding his feelings and sensibilities." The physical injuries received are of a permanent character; the plaintiff is a professional dentist, and his ability to labor at his profession has been greatly impaired. The negligence charged was, (1) in undertaking to apply the brakes save from the platform of the "trailer," and (2) in giving the plaintiff no warning that an attempt would be made by the conductor to apply the brakes while standing upon the rear platform of the car ahead. The nature of the injuries sustained and their effect upon the earning capacity of the plaintiff were also alleged in detail, and damages to the amount of $15,000 were asked. To the petition the defendant company demurred both generally and specially. The court overruled the demurrer, save as to one of the plaintiff's allegations to which special objection was raised, and exception was taken to this ruling upon the demurrer. The railway company also excepted to the refusal of the court to grant its motion for a new trial. By cross-bill of exceptions the plaintiff complains of the rejection by the court of certain testimony which he offered on the trial. Upon the argument here, counsel for the company did not insist on the assignment of error touching the disposition

made of its demurrer, and announced that the 7th and 8th grounds of the amendment to the motion for a new trial were abandoned.

*Dessau, Harris & Harris* and *Roland Ellis*, for the Railway Company.

*B. M. Davis, T. S. Felder,* and *J. F. Urquhart*, contra.

EVANS, J. (After stating the facts.) 1. Complaint is made that the verdict of the jury was excessive, and it is further urged in behalf of the company that this result was doubtless brought about by the grave error of the presiding judge in charging the jury as to the right of a plaintiff to recover punitive damages where there are aggravating circumstances attending the commission of a tort upon him. This charge, counsel insist, was unwarranted by the evidence; and in this view we concur. The testimony discloses that the conductor, while perhaps inattentive and inexcusably careless, committed no wanton act which resulted in injury to the plaintiff or showed anything more than a negligent disregard for his safety. While the cars were descending a steep grade, a passenger indicated his desire to disembark at the next stopping point, and the conductor signaled the motorman to stop. The motorman, realizing he could not stop the cars at that point unless the brake on the "trailer" was applied, rang his gong as a signal to the conductor to put on the brake of the rear car. As to whether the conductor, before attempting to do so, gave warning to the plaintiff and others of his intention to put on the brake, the testimony was conflicting; but there was no dispute as to his reaching for the brake from his station on the rear platform of the motor car and unintentionally striking the plaintiff while swinging the brake handle around in an effort to promptly apply the brake. There were no aggravating circumstances attending the infliction of the injury upon him. The plaintiff testified, that he immediately turned towards the conductor and said, "What do you mean by treating a gentleman that way?" and the latter, "in an insulting manner," replied, "You had no business standing out there;" whereupon the plaintiff said, "If you told me that when I gave you my fare, I would have gotten on another car," and the conductor replied, "You had no business standing up there." The plaintiff then said, "I did not know I was violating any rule of the company." To this remark the

conductor made no response, and nothing else occurred. The plaintiff further testified: "I spoke very loudly; I was a little angry, I will admit; and he spoke just about the same way. The other passengers could hear what I said if they had ears; they ought to have heard it in the middle or the back of the car, and I suppose they did. It mortified me very much; a great many ladies sitting there, and other things, and it appeared to me the most of those people did not know; it looked like the conductor was trying to put me off, as if I had not paid my fare." It thus appears that the plaintiff, with some show of passion, undertook to call the conductor to account for what he had unintentionally done, and that the conductor replied to him, in a manner which he regarded as insulting, that he was himself to blame, for the reason that he should not have been in the way. What the conductor said, even though he may have spoken discourteously, did not amount to an insult or to such abusive treatment of a passenger as would render the company liable in damages. If the plaintiff was insulted, he was supersensitive; if he suffered mortification because he feared the passengers did not understand the situation, there were no grounds for his fears in this regard, for nothing was said or done to lead his fellow-passengers into the mistaken belief that the conductor was trying to put him off because he had not paid his fare. Had the manner of the plaintiff been more gentle it is not improbable that the conductor would have been civil, if not equally courteous. If, as seems to be true, it "was the plaintiff's fault that the conductor was out of tune," the former can not complain of disrespectful treatment by the latter. *Peavy* v. *Railroad Co.*, 81 *Ga.* 488. A conductor has been judicially recognized as human. *City Electric Ry. Co.* v. *Shropshire*, 101 *Ga.* 36. And this court is committed to the doctrine that if a passenger is himself responsible for exciting the anger of an agent or employee of a railway company, whereby he is for the time being unfitted for performing the exacting duties he owes to his employer with respect to his treatment of passengers, the company can not be held accountable for improper conduct on the part of its servant. *Central Ry. Co.* v. *Motes*, 117 *Ga.* 923, 933.

2. To so much of the plaintiff's testimony as related to the mortification he suffered from what he conceived to be disrespect-

ful conduct on the part of the conductor, counsel for the company objected on the grounds, (1) that "the declaration did not allow a recovery for wounded feelings," and (2) that "the case was not one for the recovery of damages for wounded feelings, but the declaration is projected on the idea of recovery for physical injury only." The testimony was not, for the reasons assigned, inadmissible. In his petition the plaintiff specifically alleged that when he protested against the careless way in which the conductor had acted to his injury, the conductor, in the hearing of the other passengers on the car, responded in an insulting and uncalled-for manner, greatly mortifying him and wounding his feelings and sensibilities. For the wrongs he alleged he had suffered, he claimed to be entitled to recover a specified amount. "In order for the jury to assess punitive damages in an action for a tort, it is not necessary that they should be claimed eo nomine in the declaration. It is enough that the facts alleged and proved be such as to warrant the assessment." *S., F. & W. Ry. Co.* v. *Holland*, 82 *Ga.* 258.

3. Objection was also raised to the plaintiff being allowed to testify that a gentleman who was shown to have been an eye-witness to the occurrence under investigation and who had been in attendance on the court, but was not then present, had left without the plaintiff's consent. That the jury might not draw any unfavorable inferences because of the failure of the plaintiff to introduce this absent witness, it was competent for the plaintiff to explain that he was not responsible for his absence. *R. & D. R. Co.* v. *Garner*, 91 *Ga.* 27.

4. The court very properly, notwithstanding the contention of the defendant that the plaintiff's capacity and expertness as a dentist were not in issue, admitted testimony to the effect that he was capable and expert in his chosen profession prior to his injury.

5. A witness introduced in behalf of the plaintiff to show to what extent he was injured testified that he (the witness) was an osteopath physician, but did not prescribe drugs or practice medicine as did the ordinary practitioner, and was not licensed to do so. It appeared that he had taken a course of study in osteopathy at the Southern School of Franklin, Ky., and had graduated from that college after attending four terms of school

of five months each.    He had taken a ten-months course in physiology, and had read certain named text-books on that subject, and on anatomy, pathology, and the practice of medicine. He had been in actual practice of his calling since the first of February of the year prior to the trial, and had gained consider-able experience in the treatment of nervous disorders.    Coun-sel for the company nevertheless objected to the witness being examined as an expert touching the nature and probable dura-tion of the injuries sustained by the plaintiff; but the court held that the witness was competent to testify.    Had he been licensed under the laws of this State to practice medicine, it is clear that he would have been competent to testify as an expert witness, upon the fact being made to appear that he was a licensed physician.    *Von Pollnitz* v. *State*, 92 *Ga.* 16.    Not being a li-censed practitioner, it was necessary to lay the proper founda-tion showing him to be an expert as to the subjects on which he proposed to express his opinion.    We think the necessary foundation was laid.    " The opinions of experts on any question of science, skill, trade, or like questions, are always admissible." Civil Code, § 5287.    " An expert is one possessing, in regard to a particular subject or department of human activity, knowledge not acquired by ordinary persons."    12 Am. & Eng. Enc. L. (2d ed.) 424.    " This knowledge may be derived from experience or from study and direct mental application."    Id. 425.    " Strictly speaking, an 'expert' in any science, art, or trade, is one who by practice or observation has become experienced therein."    Rogers on Expert Testimony (2d ed.) 2.    But generally nothing more is required, to entitle one to give testimony as an expert, than that he has been educated in the particular trade or profession.    Id. 4; 1 Gr. Ev. § 440.    Knowledge gained by consistent and close study of medical works renders one competent to testify as an expert concerning the matters of which he has thus learned.    *White* v. *Clements*, 39 *Ga.* 232; *Mayor &c. of Jackson* v. *Boone*, 93 *Ga.* 662.    It is not essential that he should be actively engaged in the practice of medicine.    *Everett* v. *State*, 62 *Ga.* 71; 12 Am. & Eng. Enc. L. (2d ed.) 426.    Nor is it essential that one who really has a scientific education on the subject should be a grad-uate of " any medical college, or have a license to practice from any medical board."    Id. 100 (1).    What he knows is what

really qualifies him to express an opinion as an expert, and a diploma or license is important only as furnishing satisfactory evidence of his competency as a witness. Accordingly, a ." person who is neither a physician nor surgeon can express an opinion on a medical question, when the matter inquired about lies within the domain of the profession or calling which the witness pursues." Id. 105 (9). The plaintiff showed that the witness introduced in his behalf pursued a calling which required a special study of anatomy and physiology, and his testimony indicates that he had a practical as well as a theoretical knowledge concerning the subjects as to which he undertook to impart information and to express the opinion of an expert.

6. The court in general terms instructed the jury that in the event they found in favor of the plaintiff, it would be their duty to estimate "the present value of the amount he claims he has lost by reason of his diminution in capacity to labor by reason of the injury," and that they might determine what would be a present cash equivalent from their own knowledge of arithmetic and mathematics, or from a paper which had been introduced in evidence and which showed the expectancy of one 49 years of age, and other data, taken from the mortality and annuity tables published in the 70th *Ga.*, " or from other evidence in the case." The instruction given to the jury upon this subject is criticised as being confusing and as laying down an incorrect method to be pursued by the jury, and "because it deprived the jury of the right to use their general knowledge upon the computation of damages of this character." The general tenor of the charge was right, though the language employed by the court was more or less involved and not altogether accurate. The gross amount which the jury might find the plaintiff would lose because of his diminished capacity to labor, as disclosed by the evidence, and not " the amount which he claims he has lost," was the sum to be reduced to present value. This and other minor inaccuracies of expression render the charge less clear than it should be. Otherwise it is not open to the criticisms made upon it. If more specific instructions were desired, an appropriate request to charge should have been presented. *Southern Ry. Co.* v. *O'Bryan,* 119 *Ga.* 148 (4), 151.

7. The cross-bill of exceptions is mainly devoted to a number

of assignments of error upon the ruling of the court that the wife of the plaintiff, because of the marital relation existing between them, and the policy of the law to preserve inviolate the confidential communications between husband and wife, was an incompetent witness to testify as to the nature of the injury sustained by her husband and its effect upon his health, etc., etc. She was not permitted to even answer the question: "Did you, at any time, look at and examine the back of Dr. Mason?" nor to give evidence that "Dr. Mason's shoulder was swollen." We are of the opinion that none of the testimony excluded came within the contemplation of the section of our code bearing on the subject of confidential communications. Civil Code, § 5198. In *Stanford* v. *Murphy*, 63 *Ga.* 411 (5), the rule was correctly stated to be that "The wife is an incompetent witness for or against the husband in regard to any information derived from his confidence in her." It can scarcely be said that Dr. Mason was seeking to make any secret of his injury, its location, nature, or extent. He submitted himself to examination by not only his own, but the company's physicians. Some one had to minister to his wants and give him proper nursing and attention. His wife could minister to him in the capacity of nurse or attendant without rendering herself incompetent to testify to the knowledge she gained concerning his physical condition. There is nothing to indicate that she derived such knowledge from any special confidence which Dr. Mason reposed in her as his wife, or that there was any occasion for his making to her, as such, any confidential communication concerning the matter. Of course she could not properly be permitted to testify to any complaints of pain and suffering which he may have made to her; but testimony as to such complaints would be inadmissible, not because of the marital relation, but simply because it would be mere hearsay. *Atlanta St. R. Co.* v. *Walker*, 93 *Ga.* 462, 467. As to facts within her knowledge concerning the effects upon her husband produced by the blow he received, she stood upon the same footing of any other competent witness, not having in point of fact gained her information through any communication from her husband which was intended to be private and confidential.

8. Upon being asked what external evidences of pain Dr. Mason gave of his sufferings, Mrs. Mason answered: "Swollen

veins on his forehead, red eyes, and every symptom of a violent headache. I observed swollen veins on his forehead, and red eyes, and red face, and every symptom I have ever noticed with any one who had headache." On motion of counsel for the company, the court ruled out so much of the answer as related to what she had "ever noticed with any one who had headache." The ruling was eminently proper. The witness was competent to state what symptoms she observed, but not to generalize or to state her conclusion that Dr. Mason had every symptom which she had ever noticed in others who suffered from headache. The witness did not profess to be an expert.

The foregoing discussion disposes of all the questions presented by either the main or the cross-bill of exceptions, except a complaint by the defendant company that the court refused to declare a mistrial because of improper remarks made by counsel for the plaintiff while arguing the case before the jury. As there must be another trial, we do not feel called on to pass upon this complaint. The court ruled that the remarks of counsel were not authorized by the evidence, and we have no reason to apprehend that the propriety of remarks of this nature will become the subject-matter of controversy at the next hearing.

*Judgment on both the main and the cross-bill of exceptions reversed. All the Justices concur, except Simmons, C. J., absent.*