PEOPLE v PARNEY

1. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—PLEA OF GUILTY—
   STATUTES.

   A defendant who is determined incompetent to stand trial shall
   not be proceeded against while he is incompetent; this right to
   avoid prosecution while incompetent is both statutory and
   grounded in the due process clause, and a plea of guilty does
   not waive this right (MCLA 330.2022[1]; MSA 14.800[1022] [1]).

2. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—EXPERIENCE AND
   QUALIFICATIONS—COMPETENCE TO STAND TRIAL—STATUTES.

   An expert for determining a defendant's competence to stand
   trial must be minimally qualified to do so and equipped to
   determine whether a defendant is incapable, because of his
   mental condition, of understanding the nature and object of the
   proceedings against him or of assisting in his defense in a
   rational manner; and, where the record contains no evidence of
   such experience or qualifications, to qualify such a person as an
   expert witness is an abuse of discretion and results in reversi-
   ble error (MCLA 330.2020[1]; MSA 14.800[1020] [1]).

3. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—EVALUATIONS—
   PRESENT MENTAL STATE—STALE FINDINGS.

   A defendant is entitled to a new and separate evaluation of
   competence at the time his plea of guilty is accepted based
   upon his present mental state and not the stale findings of an
   evaluation made some months before.

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 21 Am Jur 2d, Criminal Law §§ 62, 63, 65, 69.
   Investigation of present sanity to determine whether accused
      should be put, or continue, on trial. 142 ALR 961.
   Validity and construction of statutes providing for psychiatric
      examination of accused to determine mental condition. 32 ALR2d
      434.
[7] 21 Am Jur 2d, Criminal Law §§ 486–491, 505.
   Court's duty to advise or admonish accused as to consequences of
      plea of guilty or to determine that he is advised thereof. 97
      ALR2d 549.

4. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—STANDARDS OF COM-
    PETENCE—PLEA OF GUILTY.

    A defendant's competence to plead guilty should be decided upon
    the same standards employed to determine a defendant's com-
    petence to stand trial.

5. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—MEDICAL EXPERTS.

    Assessments of a defendant's competence to stand trial may be
    performed only by qualified *medical* experts.

6. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—STATUTORY CON-
    STRUCTION—SOCIAL WORKERS—AREA OF EXPERTISE—STATUTES.

    A social worker may be required by statute to submit to an
    appropriate court a written evaluation of the prospects or
    prognosis of a particular case, but to permit social-worker
    assessment of a defendant's competence to stand trial exceeds
    the fair intendment of the statute; a social worker may not give
    opinions beyond his or her area of expertise (MCLA 338.1751 *et
    seq.;* MSA 18.365[1] *et seq.).*

7. CRIMINAL LAW—PLEA OF GUILTY—EXPLANATION OF CHARGES—DUE
    PROCESS.

    A plea of guilty of second-degree murder is involuntary and
    violative of due process where the record does not establish
    that the court informed a defendant that intent to cause death
    is an essential element of second-degree murder; but, a record
    which shows a representation by counsel that the charge had
    been explained to the defendant will suffice to avoid the re-
    quirement that the court so inform the defendant.

Appeal from Hillsdale, Kenneth G. Prettie, J. Submitted December 8, 1976, at Lansing. (Docket No. 27098.) Decided March 3, 1977.

Junior L. Parney was convicted, on his plea of guilty, of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Lawrence L. Hayes, Jr.,* Prosecuting Attorney, *James B. Parker, Chief Assistant Prosecuting Attorney, Trial Division, and Donald L. Sanderson,* Assistant Prosecuting Attorney, for the people.

*Chari K. Grove,* Assistant State Appellate Defender, for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and D. C. RILEY, JJ.

PER CURIAM. As a result of plea negotiations between the prosecution and defense counsel, defendant Junior Laverne Parney, originally charged with first-degree murder, MCLA 750.316; MSA 28.548, pled guilty at his arraignment to second-degree murder, MCLA 750.317; MSA 28.549, for the shooting death of his estranged lover, Ms. Elizabeth Kurtz. Prior to this plea, defense counsel waived the reading of the information and the second-degree murder statute. The circuit court accepted the proffered plea and later sentenced defendant to a 30- to 45-year term in prison.

## I.

Initially, defendant charges that the lower court erred in permitting a social worker to determine his competence to stand trial. The prosecutor responds that defendant waived this error by his subsequent plea of guilty. See *People v Nagle,* 59 Mich App 345; 229 NW2d 446 (1975), and *People v Miller,* 62 Mich App 495; 233 NW2d 629 (1975). Based on our Supreme Court's recent pronouncement in *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976), we reject the prosecutor's contention.

In *Alvin Johnson,* Justice WILLIAMS, writing for the Court, observed:

"[I]t is clear that the United States Supreme Court, while recognizing that certain rights of defendant may be waived by a subsequent plea of guilty, does not say

that is true of all rights. Certainly it is true that those rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant, or the state's authority or ability to proceed with the trial may never be waived by guilty plea. These rights are similar to the jurisdictional defenses in that their effect is that there should have been no trial at all. The test, although grounded in the constitution, is therefore a practical one. Thus, the defense of double jeopardy, those grounded in the due process clause, those relating to insufficient evidence to bind over at preliminary examination and failure to suppress illegally-obtained evidence without which the people could not proceed are other examples. Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right." 396 Mich at 443–444. (Footnotes omitted.)

Unquestionably, the state is powerless to undertake a criminal prosecution of an incompetent defendant:

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCLA 330.2022(1); MSA 14.800(1022)(1).

We believe that this right of a defendant to avoid prosecution while incompetent is one "grounded in the due process clause" and in the foregoing statute. Hence, under *Alvin Johnson*,[1] *supra,* defendant's later guilty plea did not waive the alleged error arising from the prior competency determination. Accordingly, we proceed to the merits of this appeal.

---

[1] While the opinion of the Court in *Alvin Johnson* garnered the signatures of only three of the five justices who heard the case, it is nonetheless controlling. *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976).

## II.

Defendant assails the lower court's ruling at a competency hearing held on September 30, 1975, which permitted, over objection, Ms. Constance Fortin, a social worker employed at the Center for Forensic Psychiatry, to testify and to submit a written report, dated September 23, 1975, regarding defendant's competence to stand trial. This evaluation by Ms. Fortin was the second competency determination involving defendant undertaken by the forensic center. The first was performed on July 2, 1975, by a psychiatrist, Dr. Robert Bort, at circuit court behest to determine whether defendant could stand trial on two prior charges, carrying a concealed weapon and felonious assault with a firearm. These earlier charges arose out of a confrontation between defendant and his now deceased paramour, Ms. Kurtz, at her home. According to his admissions at the plea-taking, defendant, while out on bond on the weapons charges, returned to Ms. Kurtz's home, quarreled with her, fatally shot her, and then unsuccessfully attempted to take his own life.

After a one-hour interview with defendant, Dr. Bort concluded that defendant was fully competent to stand trial on the weapons charges; the psychiatrist emphasized, however, that defendant:

"may have a psychotic process which is in remission because of his current treatment with moderate doses of antipsychotic medication, namely, Mellaril and Stelazine. Additional diagnoses include habitual excessive drinking and [facial] tic. Whether or not the patient has a schizophrenic process which is precipitated by his alcoholism would in part depend upon additional background history not currently available from this patient. *Therefore, the diagnoses at this time must remain quite tentative."* (Emphasis added.)

Dr. Bort's written report was admitted at the September 30, 1975, competency hearing.

The testimony elicited from Ms. Fortin at the September 30th hearing reveals that she holds a masters degree in social work from the University of Michigan with emphasis in psychiatric case-work; that she interned for eight months as an "Outreach worker" preparing mental patients for hospital release; that she worked for two years as a "Medical Social Worker" in a medical facility dealing with the psychosocial problems of disabled patients; that she interned, as part of her masters program, for unspecified periods with a community mental health program in Washtenaw County and with Mt. Carmel Hospital in Detroit. Ms. Fortin further testified that her present job description was that of forensic social worker; and that she had been employed at the forensic center for less than three months and had interviewed approxi-mately 13 other persons prior to defendant. She also admitted that her training differed from that required of a psychiatrist; that she was not quali-fied to discern or evaluate medically rooted psycho-logical problems; that in the course of a 1-1/2 hour interview with defendant she undertook "a mental status exam" of defendant, "observing [his] behav-ior[,] * * * appearance, * * * mood, affect, thought content, thought process, judgment [and] insight". To complement these tests she was given a check-list drafted by two doctors at the forensic center which described a spectrum of psychiatric ills. Ms. Fortin also indicated that she had briefly discussed defendant's situation with a staff doctor at the forensic center.

From defendant personally and from an uniden-tified person at the jail where defendant had been held, Ms. Fortin learned that defendant was tak-

ing medication to reduce anxiety and was under the influence of these drugs during the interview. She stated, however, that it did not occur to her that this medication would have affected defendant's reactions to her questions at the interview.

After cautious and thorough review of the record, we believe the lower court abused its discretion and thereby erred reversibly in qualifying Ms. Fortin as an expert capable of determining defendant's competence to stand trial on the murder charge. *People v Skowronski,* 61 Mich App 71, 79–80; 232 NW2d 306 (1975). Further, we disagree with *People v Lamont Crawford,* 66 Mich App 581; 239 NW2d 670 (1976), to the extent it holds that *any* member of the forensic center staff, under MCLA 330.2026; MSA 14.800(1026), may determine a defendant's competence to stand trial. Implicit within MCLA 330.2026, we believe, is the assumption that the "personnel" of the forensic center chosen "to perform examinations relating to the issue of incompetence to stand trial" must be minimally qualified to do so.[2] Other than the fact of her employment with the forensic center, we glean no evidence from the record which shows Ms. Fortin to be equipped to determine whether defendant "is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner". MCLA 330.2020(1); MSA 14.800(1020)(1). While she de-

---

[2] We note that GCR 1963, 786 requires "the performance of [a] forensic *psychiatric* evaluation" on a defendant whose competence is questioned. (Emphasis added.) When statute and court rule collide in an area involving judicial practice and procedure, the court rule, of course, prevails. *Buscaino v Rhodes,* 385 Mich 474; 189 NW2d 202 (1971), *People v Joker,* 63 Mich App 421; 234 NW2d 550 (1975). Thus, use of the word "personnel" in MCLA 330.2026; MSA 14.800(1026) cannot override the command of GCR 1963, 786 that a possibly incompetent defendant be given a forensic *psychiatric* evaluation.

nominates herself a "forensic" social worker, her recorded background is bereft of any indication that she is experienced in the application of psychiatric knowledge to the processes of law. Doubtless psychosomatic ailments and other organic problems can play a significant role in assessing a defendant's competence to stand trial, and doubtless Ms. Fortin by her own admission is unqualified to make such an assessment. Nor is she qualified to decide the effects defendant's medication had upon his answers to her questions or upon his general competence. Compare MCLA 330.2020(2); MSA 14.800(1020)(2).

Four additional grounds buttress our conclusion that the lower court committed reversible error in qualifying Ms. Fortin as an expert on competence:

1. When one collates Dr. Bort's written evaluation of July 2, 1975, with Ms. Fortin's report of September 23, 1975, one notes a striking similarity of language that cannot be attributed to mere coincidence.[3] Ms. Fortin acknowledged at the September 30, 1975, hearing that at the prosecutor's request she utilized Dr. Bort's notes and written report as an aid in her evaluation of defendant. However, we cannot tell whether Ms. Fortin independently

---

[3] Dr. Bort's report of July 2, 1975, states in pertinent part:

"Mental status examination, which was performed in private, lasted approximately one hour. The patient was an appropriately dressed, white male, appearing somewhat older than his stated age. * * * Conversationally, the intellectual functioning was judged to be within the low-normal range, although the general fund of information was certainly moderately lacking. * * * He was unable to interpret proverbs and this was thought to be from lack of exposure to same."

Ms. Fortin's report of September 23, 1975, states in pertinent part:

"Mental status examination, which lasted approximately an hour and one-half, revealed a caucasion [sic], gray-haired, 41 year old man, who appeared somewhat older than his stated age. * * * Conversationally, the intellectual functioning was judged to be within the low-normal range, although the general fund of information was certainly moderately lacking. He was unable to interpret proverbs and this was thought to be from lack of exposure to same."

assessed defendant's competence, arrived at the same conclusion as Dr. Bort, and then used his wording as a matter of convenience; or, whether Ms. Fortin decided chiefly to defer to Dr. Bort's expertise. While we note that in other areas of her report Ms. Fortin differed with the findings of Dr. Bort (thus supporting the conclusion that defendant was independently evaluated by her), we also recognize that competence is a transitory phenomenon, that is, "an ongoing concern", *People v Matheson,* 70 Mich App 172, 179; 245 NW2d 551 (1976), and that defendant was entitled to an evaluation of competence based upon his mental state as of September 23, 1975, not upon the admittedly "tentative" and, by then, stale findings of Dr. Bort as parroted by Ms. Fortin.

2. Various panels of this Court have recently decided to reject the position taken in *Sieling v Eyman,* 478 F2d 211 (CA 9, 1973), and to hold that a defendant's competence to plead guilty should be decided based upon the same standards employed to determine a defendant's competence to stand trial:

"[A] finding that the defendant is able to comprehend the proceedings against him involves a conclusion that he is competent to understand all proceedings, not just a trial." *People v Matheson, supra* at 181.

See also, *People v Belanger,* 73 Mich App 438; 252 NW2d 472 (1977).

Without intending to question the wisdom of *Matheson* and *Belanger,* we believe that, given the judicial use of a competency evaluation for *dual* purposes, it becomes crucial that the assessment of competence be undertaken by a fully qualified expert. The results of an erroneous determination

are not difficult to fathom. A defendant erroneously found competent to stand trial who is later convicted (whether by his own plea or by jury verdict) may be shuttled off to prison to the detriment of himself and other prison inmates. Similarly, the erroneous assessment of incompetence deprives defendant and society of their day in court and raises the prospect that a possibly culpable but nondangerous defendant will avoid lengthy incarceration by means of a short respite at a mental facility. See MCLA 330.2031; MSA 14.800(1031) and MCLA 330.1401, 330.1515; MSA 14.800(401), 14.800(515).

3. The statutory procedures which become operative after a defendant is found incompetent to stand trial also suggest that assessments of competence are to be performed only by qualified *medical* experts. For example, if after a judicial determination of a defendant's incompetence the court believes that there is a substantial probability that treatment would render defendant competent within the time limitations of MCLA 330.2034(1); MSA 14.800(1034)(1), then MCLA 330.2032(2); MSA 14.800(1032)(2) directs that "[t]he court shall appoint a *medical* supervisor of the course of treatment. The supervisor may be any person or agency willing to supervise the course of treatment, or the department of mental health." (Emphasis added.) When this language is read together with the provision detailing the duties of the medical supervisor, see MCLA 330.2038; MSA 14.800(1038), we believe it untenable that nonmedical personnel could properly be assigned as medical supervisors of treatment.

4. We do not read 1972 PA 352 [MCLA 338.1751 *et seq.;* MSA 18.365(1) *et seq.],* the statute providing for licensing of social workers, as supportive of the

proposition that social workers are qualified to render competency evaluations. While the statutory definition of social work, MCLA 338.1751(d); MSA 18.365(1)(d),[4] and the provision dealing with nondisclosure of confidential communications, MCLA 338.1764; MSA 18.365(14),[5] might arguably be stretched to permit social-worker assessments of a defendant's competence to stand trial, we believe that such a construction exceeds the fair intend-

[4] Sec. 1(d):

" 'Social work' means the professional activity of helping individuals, groups or communities to enhance or restore their capacity for social functioning and creating societal conditions favorable to this goal. Social work practice consists of the professional application of social work values, principles and techniques to 1 or more of the following ends: helping people obtain tangible services; counseling with individuals, families and groups; helping communities or groups provide or improve social and health services; and participating in relevant legislative processes. The practice of social work requires knowledge of human development and behavior; of social, economic and cultural institutions; and of the interaction of all these factors." MCLA 338.1751(d); MSA 18.365(1)(d).

[5] "Sec. 14. (1) A person registered as a certified social worker, social worker or social work technician or an employee or officer of an agency for whom the certified social worker, social worker or social work technician is employed shall not be required to disclose a communication or any portion of a communication made by his client to him or his advice given thereon in the course of his professional employment.

"(2) A communication between a certified social worker, social worker or social work technician, or an agency of which the certified social worker, social worker or social work technician is an agent and a person counseled is confidential. This privilege is not subject to waiver except when the disclosure is part of the required supervisory process within the agency for which the certified social worker, social worker or social work technician is employed; or except where so waived by the client or a person authorized to act in his behalf. The certified social worker, social worker or social work technician shall submit to the appropriate court a written evaluation of the *prospects or prognosis of a particular case without divulging facts or revealing confidential disclosures when requested by a court for a court action.* An attorney representing a client who is subject of such an evaluation shall have the right to receive a copy of the report. Where required for the exercise of a public purpose by a legislative committee the certified social worker, social worker, social work technician or agency representative may make available such statistical and program information without violating the confidentiality of the client." MCLA 338.1764; MSA 18.365(14). (Emphasis added.)

ment of the statute. That a social worker may be required to "submit to the appropriate court a written evaluation of the prospects or prognosis of a particular case" does not mean that he or she may give opinions beyond his or her area of expertise.

### III.

Since a remand for a new determination of defendant's competence is required, we address only cursorily another issue defendant asserts on appeal: whether a plea of guilty is involuntary and hence violative of due process where the record does not establish that defendant was informed that intent to cause death is an essential element of second-degree murder. Arguing for an affirmative answer, defendant cites *Henderson v Morgan,* 426 US 637; 96 S Ct 2253; 49 L Ed 2d 108 (1976).

At first blush, the similarities between the instant defendant and defendant Morgan are striking:

1) Both defendants were of low intelligence.

2) Both defendants had quarrelled with their victims prior to killing them.

3) Both were charged with first-degree murder but elected to plead guilty to second degree.

4) The competency of both defendants was questioned before trial.

5) Both defendants were found competent to stand trial.

6) Neither guilty plea record contains any explicit statement that the intent to cause death is an essential element of second-degree murder.

Nevertheless, *Henderson v Morgan* can be distinguished. There the Supreme Court based its hold-

ing on a factor that does not obtain in the present case. Specifically, the lower court found that defendant Morgan " 'was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree' " 426 US at 640.

In the instant case, however, the following colloquy between the lower court and defendant removes this case from the rule announced in *Henderson:*

"The Court: Mr. Gibbons [defense counsel] has explained the difference between these two charges that are placed against you?

"Defendant Parney: Yeah.

"The Court: And do you understand the difference in pleading guilty to the charge of murder in the second degree?

"Defendant Parney: Yes."

Under both the majority opinion in *Henderson, supra* at 647, and the four-justice concurrence written by Justice White, *Id,* fn 2, p 649, a representation by counsel that the charge has been explained to defendant will suffice to avoid the *Henderson* defect.

In accordance with part II of this opinion, this case is reversed and remanded for a new evaluation by a *qualified* expert of defendant's competence to stand trial on the second-degree murder charge, see *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973), *Guilty Plea Cases,* 395 Mich 96, 135–137; 235 NW2d 132 (1975), to be followed by a judicial redetermination of competence as required by statute.