A91A0832. IN THE INTEREST OF S. T., a child.
(410 SE2d 312)

SOGNIER, Chief Judge.
The mother of S. T. appeals from the order terminating her parental rights in her daughter.

1. Appellant contends the trial court erred by allowing Brenda Nicholson to testify as an expert that appellant suffers from major depression with psychotic aspects of a schizophrenic nature. Nicholson testified that she is employed by the Department of Human Resources, Mental Health, and is the coordinator of services in five counties and a clinical staff person at the mental health center; that she has a bachelor's degree in social work and a master's degree in education and counseling; and that she has worked at the mental health center under the supervision of psychiatrists for 17 years and has worked with appellant since 1982. The record reveals that the State then offered Nicholson as an expert. On voir dire, Nicholson testified that she is qualified by the State as a mental health professional under the rules and regulations of the Department of Human

Resources, Mental Health; that she is enabled to evaluate clients, make diagnoses, and establish treatment plans; and that all of her work is done under the supervision of a psychiatrist. See OCGA § 43-10A-7 (a), (b) (4). She acknowledged that she is not a clinical psychologist or a psychiatrist.

Appellant argues that because Nicholson was not a psychologist or a medical doctor, the trial court erred by allowing her to give her opinion as to appellant's mental condition. "Had [Nicholson] been licensed under the laws of this State to practice medicine, it is clear that [she] would have been competent to testify as an expert witness, upon the fact being made to appear that [she] was a licensed physician. [Cit.] Not being a licensed practitioner, it was necessary to lay the proper foundation showing [her] to be an expert as to the subjects on which [she] proposed to express [her] opinion. . . . 'The opinions of experts on any question of science, skill, trade, or like questions, are always admissible.' [Cit.] 'An expert is one possessing, in regard to a particular subject or department of human activity, knowledge not acquired by ordinary persons.' [Cit.] 'This knowledge may be derived from experience or from study and direct mental application.' [Cit.] 'Strictly speaking, an "expert" in any science, art, or trade, is one who by practice or observation has become experienced therein.' [Cit.] But generally nothing more is required, to entitle one to give testimony as an expert, than that [she] has been educated in the particular trade or profession. [Cits.] Knowledge gained by consistent and close study of medical works renders one competent to testify as an expert concerning the matters of which [she] has thus learned. [Cits.] It is not essential that [she] should be actively engaged in the practice of medicine. [Cits.] Nor is it essential that one who really has a scientific education on the subject should be a graduate of 'any medical college, or have a license to practice from any medical board.' [Cit.] What [she] knows is what really qualifies [her] to express an opinion as an expert, and a diploma or license is important only as furnishing satisfactory evidence of [her] competency as a witness. Accordingly, a 'person who is neither a physician nor surgeon can express an opinion on a medical question, when the matter inquired about lies within the domain of the profession or calling which the witness pursues.' [Cit.]" *Macon Ry. & Light Co. v. Mason*, 123 Ga. 773, 778-779 (5) (51 SE 569) (1905). See also *Robertson v. Aetna Life Ins. Co.*, 37 Ga. App. 703 (2) (141 SE 504) (1927) (x-ray specialist may give opinion whether x-rayed bones have been injured, though not a graduate of a medical school or licensed to practice medicine); *Moss v. Moss*, 135 Ga. App. 401, 404-405 (5) (218 SE2d 93) (1975) (DFCS caseworker-investigator qualified as expert in psychology and opinions entitled to great weight).

The State showed that Nicholson pursued a calling which re-

quired a special study of mental health problems, and her testimony indicates that she had a practical as well as a theoretical knowledge concerning the subjects as to which she undertook to impart information and to express the opinion of an expert. Accordingly, we find no error either in the trial court's determination that Nicholson was an expert or in the admission of her testimony. *Macon Ry. & Light Co.*, supra at 779 (5).

2. Even assuming, arguendo, that testimony by S. T.'s foster parent that S. T. has nightmares was hearsay, the admission of that testimony presents no grounds for reversal because the transcript reveals it was merely cumulative of identical testimony by S. T.'s caseworker, admitted without objection. See generally *Steverson v. Hosp. Auth. of Ware County*, 129 Ga. App. 510, 514 (2) (a) (199 SE2d 881) (1973). We note that where hearsay is admitted without objection, the mere fact that such evidence was admitted does not vitiate the verdict. *Stow v. Hargrove*, 203 Ga. 735, 736 (6) (48 SE2d 454) (1948). That is true here where, even giving no weight or force to this hearsay, see generally *Green v. Sun Trust Banks*, 197 Ga. App. 804, 809 (4) (a) (399 SE2d 712) (1990), there was other evidence of a clear and convincing nature on which the trial court could base its finding of detriment to the child.

3. We find no error in the admission of testimony by Tom White, Ph.D., a licensed clinical psychologist, regarding schizophrenia. Although Dr. White testified that because schizophrenia is primarily treated with medication it falls more within the realm of psychiatry than psychology, he also testified that he has treated and evaluated schizophrenics from a behavioral and social standpoint in conjunction with medical management of the illness. The record thus does not support appellant's argument that Dr. White was not qualified as an expert to give his opinion on schizophrenia.

4. Appellant contends the State failed to show by clear and convincing evidence that her parental rights should be terminated, specifically, that the evidence was insufficient to show parental misconduct or inability under the standard in OCGA § 15-11-81 (a). We find no merit in appellant's argument to the extent that it is based on her contentions, rejected above, regarding the qualifications of Nicholson and Dr. White to testify regarding the schizophrenic nature of appellant's mental illness and the negative impact that illness has on her ability to provide adequately for the physical, mental, emotional, and moral condition and needs of S. T. The record revals that appellant's mental illness is of long duration and that she has been repeatedly hospitalized. S. T. has spent a significant portion of her lifetime in and out of foster care, which was sometimes initiated when appellant contacted authorities because she recognized her own inability to care for S. T. Various caseworkers testified that the occasions during

which it appeared appellant could care for S. T. would be followed by periods in which appellant would be subject to delusional, obsessive, and suicidal behavior; would live in filthy conditions; and would fail to take medicine required to control the epileptic seizures from which she also suffers. Attempts to reunite appellant and S. T. proved unsuccessful due to this cyclical nature of appellant's mental illness. Caseworkers assigned to appellant also testified regarding the extent to which appellant is dependent on various agencies and friends to provide her and her child with food, money, and transportation; to manage her finances; and to make decisions, which consequently often devolved upon S. T., ten years old at the time of the hearing. The record also contained evidence regarding S. T.'s relationship with her foster family, the emotional strain caused by her visits to appellant, especially as to her fears of having to handle her mother's depression and epileptic seizures, her requests to be adopted by her foster parents, and her fears that she will be taken away from them. Expert testimony was also adduced regarding the undesirable effects of long term foster care on S. T., the child's need for a stable home environment, and the unlikelihood that appellant, with her fluctuating and deteriorating mental health, could ever provide S. T. with the type of emotional relationship the child requires.

"The appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. . . . The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test . . . , is not met. When we apply that test here we note the conflicting evidence presented to the trial court and conclude that a rational factfinder could have found by clear and convincing evidence (parental . . . inability as provided by OCGA § 15-11-81 (b))." (Citations and punctuation omitted.) *In the Interest of J. L. O.*, 197 Ga. App. 596, 597 (398 SE2d 853) (1990).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 3, 1991.

*Raymond L. Crowell*, for appellant.

*Michael J. Bowers, Attorney General, Margot M. Cairnes, McClure, Ramsay & Dickerson, Martha B. Sikes*, for appellee.