## S02A0974. ADAMS v. THE STATE.

(572 SE2d 545)

FLETCHER, Chief Justice.

A jury convicted Johnny Lee Adams of malice murder in the beating death of Dorothea Daniels.[1] He appeals, contending that the malice murder statute is unconstitutional because it fails to give notice that the offense can be committed by assaulting a person with a large rock. Because Adams failed to raise this issue in a timely manner, it is waived. His remaining enumerations of error have no merit and we affirm.

1. The evidence at trial showed that Adams and Daniels often met after work to do drugs and have sex. On the night of the murder, they went to a wooded area behind a strip mall, drank beer, and engaged in sex on a panel board lying on the ground. After Daniels questioned Adams about his seeing another woman, Adams became angry and beat her severely with a rock around the head and face. Daniels died as a result of the wounds inflicted by Adams.

After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Adams guilty of the crimes charged.[2]

2. Adams asserts that the statutes under which he was convicted, OCGA §§ 16-5-1, 16-5-1 (c) and 16-5-21 (a), are unconstitutionally vague because they do not give adequate notice that malice murder, felony murder, and aggravated battery can be committed by assaulting a person with a large rock. We need not address the merits, if any, of this challenge, because Adams failed to raise it until the motion for new trial.[3]

3. Adams raises several enumerations of error with regard to the hearing to determine his competency to stand trial. First, Adams challenges the sufficiency of the evidence. At a competency hearing, the defendant bears the burden of proving incompetency by a preponderance of the evidence.[4] "A criminal defendant is competent to stand trial if he is capable of understanding the nature and object of the

---

[1] The crime occurred May 5, 1998. A grand jury indicted Adams on September 9, 1998, and on September 29, 2000, a special jury found him competent to stand trial. Following a jury trial on June 25-27, 2001, Adams was convicted of malice murder, felony murder, and two counts of aggravated battery; he was acquitted of rape. The trial court sentenced Adams to life imprisonment for malice murder and imposed two 20-year sentences for aggravated battery, to run concurrently with each other and consecutive to the life sentence. Adams filed a motion for new trial on August 6, 2001, which the trial court denied on December 21, 2001. Adams filed a notice of appeal on January 17, 2002, and the case was docketed in this Court on March 18, 2002, and submitted for decision without oral argument on May 13, 2002.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Hardeman v. State*, 272 Ga. 361 (529 SE2d 368) (2000).

[4] *Stowe v. State*, 272 Ga. 866, 867 (536 SE2d 506) (2000).

proceedings and is capable of assisting his attorney with his defense."[5] There was ample evidence showing that Adams met this standard. Additionally, the expert testimony was consistent in showing that Adams was exaggerating his claimed symptoms of psychosis and diminished intellectual function. Therefore, the evidence supports the special jury's finding of competency.

Second, Adams contends that it was error to prevent Sandra Mullins, a licensed clinical social worker, from testifying as an expert regarding opinions formed during her evaluation of Adams. Mullins had evaluated Adams and was prepared to testify that she made a provisional diagnosis of paranoid-type schizophrenia and that she had formed an opinion of his level of intellectual functioning. The trial court excluded this testimony because whether Adams had a mental disorder was a medical opinion, only doctors can give medical opinions, and Mullins was not a doctor. This ruling was error.

Mullins's testimony detailed her educational background and experience in evaluating the mental condition of patients. She testified that she is licensed as a clinical social worker by the Composite Board of the State of Georgia, that her license allows her to interview patients and make diagnostic impressions using the Diagnostic Statistical Manual IV,[6] that she has the authority to commit a person against his will, and that she had years of experience in performing psycho-social assessments of patients to determine their mental status. This testimony was sufficient to allow her to give expert testimony regarding her professional evaluation of Adams.[7] The fact that she did not hold a medical degree goes only to the weight the jury may give her testimony.[8]

Nevertheless, we conclude that the error was harmless for several reasons: Mullins's testimony would have been cumulative of a psychiatrist called by Adams; the expert testimony showed that even with a diagnosis of schizophrenia, a defendant could be competent to stand trial; and all of the experts agreed that Adams was exaggerating his symptoms.

Third, Adams contends that it was error to compel a defense expert to produce a written report for the State. The record shows

---

[5] *Stripling v. State*, 261 Ga. 1, 2 (401 SE2d 500) (1991).

[6] OCGA § 43-10A-12 (c) provides that licensed clinical social workers may "provide psychosocial evaluation . . . to determine the nature of an individual's mental, cognitive, emotional, behavioral, and interpersonal problems or conditions."

[7] *Carr v. State*, 267 Ga. 701, 708 (482 SE2d 314) (1997) ("[q]ualification as an expert requires that the witness be educated in a particular skill or profession, or derive knowledge from experience"). Dicta to the contrary in *Ellis v. State*, 168 Ga. App. 757 (309 SE2d 924) (1983), which involved a police officer giving testimony regarding paranoid behavior, is unpersuasive.

[8] *McCoy v. State*, 237 Ga. 118 (227 SE2d 18) (1976) (jury considers expert's credentials and gives weight as it deems appropriate).

only that the State requested the report from the witness and the witness provided it directly to the State, apparently without consulting defense counsel. Under these circumstances, we find no reversible error.[9]

4. Adams contends that the trial court erred in admitting his custodial statements because he is mentally retarded, uneducated, and illiterate. The evidence at the *Jackson-Denno*[10] hearing, however, demonstrated that Adams was advised of his rights several times, acknowledged that he understood them, and waived them.

He also challenges the statements' admission on the ground that they were the fruit of an unlawful arrest and detention because the police lacked probable cause to arrest him. The record, however, shows that probable cause existed.

5. Adams raises several challenges to the jury instructions. However, a review of the instructions as a whole demonstrates no reversible error.

6. Adams contends that the failure to preserve the panel board on which the victim was found constitutes a denial of due process. To determine whether the failure to preserve evidence constitutes a denial of due process, we must consider whether the evidence was material and whether police acted in bad faith.[11] A sheriff's deputy testified that the sheriff's department had no ability to transport or store the board because of its size and its contamination with formaldehyde. He also testified that the fire department was supposed to take charge of the board, but apparently did not. Additionally, Adams has not shown that the board was material or contained evidence that would have exonerated him. Therefore, we conclude that the failure to preserve this board did not constitute a denial of due process.

*Judgment affirmed. All the Justices concur, except Benham, Carley and Thompson, JJ., who concur specially.*

CARLEY, Justice, concurring specially.

During the hearing to determine Adams' competency to stand trial, the trial court ruled that a social worker could not testify as an expert that she had made a provisional diagnosis of "paranoid-type schizophrenia." The majority concludes that the trial court erred in excluding that testimony. I strongly disagree with that holding and suggest that relevant precedent mandates the opposite conclusion. However, I fully agree with the remaining portions of the majority

---

[9] Compare *Johnson v. State*, 265 Ga. 833 (463 SE2d 123) (1995) (error to require defense experts to reduce reports to writing and supply to State).

[10] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[11] *Walker v. State*, 264 Ga. 676, 680 (449 SE2d 845) (1994).

opinion and concur in the judgment of affirmance.

A social worker, like any other lay witness, may give non-expert opinion testimony as to sanity or insanity after stating the supporting facts and circumstances. *Currelley v. State*, 145 Ga. App. 29, 30 (3) (243 SE2d 307) (1978). "Courts have also admitted the testimony of psychiatric social workers when that testimony remained within the experts' areas of specialization. [Cit.]" *State v. Zola*, 548 A2d 1022, 1041 (III) (E) (N.J. 1988). See also *In the Interest of S. T.*, 201 Ga. App. 37 (1) (410 SE2d 312) (1991).

"However, because psychiatric *diagnoses* are generally outside the competence of psychiatric social workers, appellate courts have sustained the discretion of trial courts that excluded such testimony. [Cits.]" (Emphasis in original.) *State v. Zola*, supra at 1041 (III) (E). Since paranoia and schizophrenia are medical terms relating to mental disorders, "only a qualified expert such as a psychiatrist, psychologist or medical doctor would be competent to diagnose and define such a mental disorder." *Ellis v. State*, 168 Ga. App. 757, 759 (3) (309 SE2d 924) (1983). See also *Morris v. Chandler Exterminators*, 200 Ga. App. 816, 818 (1) (409 SE2d 677) (1991), rev'd on other grounds, *Chandler Exterminators v. Morris*, 262 Ga. 257 (416 SE2d 277) (1992). Nothing in the social worker's testimony here indicates that she was such an expert or even that her diagnosis was made under the supervision of a qualified expert. Compare *In the Interest of S. T.*, supra at 37 (1).

In her testimony, the social worker relied only on her license as a clinical social worker as qualifying her to make diagnostic impressions. Compare *In the Interest of S. T.*, supra at 37 (1). However, the mere fact that she was licensed pursuant to OCGA § 43-10A-12 does not permit her to make medical, psychiatric, or psychological diagnoses. The majority opinion, in footnote 6, quotes a portion of subsection (c) of that statute, which permits the social worker to undertake a "psychosocial evaluation." However, the majority fails to explain how this provision authorizes social workers to diagnose. The term "psychosocial" merely means "of or pertaining to the interaction between social and psychological factors." Random House Webster's Unabridged Dictionary, p. 1561 (2nd ed. 1997). An evaluation of such interaction in a given individual would obviously not constitute, or necessarily lead to, a medical or psychological diagnosis. Neither OCGA § 43-10A-12 nor the definition of "social work" in OCGA § 43-10A-3 (13) says anything about diagnosis. See *Wilburn v. State*, 711 SW2d 760, 761 (1) (Ark. 1986). Compare *In re Adoption/Guardianship No. CCJ14746*, 759 A2d 755 (Md. 2000). Furthermore, nothing in OCGA § 43-10A-1 et seq. "shall be construed to authorize persons licensed under this chapter to practice nursing, occupational therapy, physical therapy, *medicine*, or *psychology*. . . ." (Emphasis sup-

plied.) OCGA § 43-10A-22. The diagnosis of mental disorders constitutes the practice of medicine or psychology, pursuant to express statutory provisions. OCGA §§ 43-34-20 (3); 43-34-26 (a); 43-39-1 (3). By choosing not to enact any similar provision permitting social workers to make medical or psychological diagnoses, the General Assembly clearly evidenced its intention to limit the making of and testifying concerning such diagnoses to physicians and psychologists. The social worker's "special competence lay more in the treatment than the diagnosis of mental disease or defect." *State v. Zola,* supra at 1042 (III) (E).

Moreover, even if a witness were qualified to diagnose a mental disorder, such testimony would not be relevant in the absence of some evidence that that condition had an adverse effect on the defendant's competence to stand trial. Indeed, "a mentally ill person can be competent to stand trial. [Cits.]" *Morrow v. State,* 266 Ga. 3 (463 SE2d 472) (1995). The social worker testified that she was not qualified to give an opinion as to whether Adams was competent to stand trial.

> [H]er recorded background is bereft of any indication that she [has expertise] in the application of psychiatric knowledge to the processes of law. Doubtless psychosomatic ailments and other organic problems can play a significant role in assessing a defendant's competence to stand trial, and doubtless [she] by her own admission is unqualified to make such an assessment.

*People v. Parney,* 253 NW2d 698, 701 (II) (Mich. App. 1977).
" 'Acceptance or rejection of the qualifications of a proffered expert witness is within the sound discretion of the trial judge and will not be disturbed on appeal absent manifest abuse.' [Cits.]" *Turner v. State,* 258 Ga. 97, 100 (3) (365 SE2d 822) (1988). The trial court did not abuse its discretion in finding that the social worker was not qualified as a medical or psychiatric expert and did not err in refusing to allow her to express an opinion as to a specific mental disorder. See *Ellis v. State,* supra at 759 (3). I fear that, as a result of today's opinion, trial courts will be reluctant to exercise their discretion to prevent a witness from expressing an expert opinion on any issue even if such witness is not qualified by experience or training to so testify.

I am authorized to state that Justice Benham and Justice Thompson join in this special concurrence.

DECIDED NOVEMBER 12, 2002 —
RECONSIDERATION DENIED DECEMBER 13, 2002.

*Michael B. King*, for appellant.

*Robert E. Keller, District Attorney, Jack S. Jennings, Jane E. Grabowski, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.